663 So.2d 882 (1995)
STATE of Louisiana
v.
Robert L. MALINDA.
No. 95-KA-292.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 1995.
*883 John M. Mamoulides, District Attorney, Terry M. Boudreaux, Assistant District Attorney, Louise Korns, of Counsel, Office of the District Attorney, Twenty-fourth Judicial District, Gretna, for Plaintiff-Appellee State of Louisiana.
Bruce G. Whittaker, Staff Appellate Counsel, Twenty-fourth Judicial District Indigent Defender Board, Gretna, for Defendant-Appellant Robert L. Malinda.
Before KLIEBERT, WICKER and GOTHARD, JJ.
KLIEBERT, Judge.
The defendant, Robert Malinda, was charged by bill of information filed on November 29, 1993 with obscenity in violation of LSA-R.S. 14:106. When arraigned on June 3, 1994, the defendant entered a plea of not guilty to the charge. After numerous continuances, the State filed a second bill of information on November 29, 1994 charging the defendant with fifth offense obscenity.[1] Prior to the commencement of trial on December 1, 1994, the State amended the bill to charge the defendant with fourth offense obscenity *884 and the defendant entered a plea of not guilty to the charge. Defense counsel made an oral motion for a continuance of the trial, but the trial court denied the motion. At the conclusion of trial that day, the six-person jury found the defendant "guilty of obscenity on a third subsequent conviction." Thereafter, on January 26, 1995, the trial court sentenced the defendant to five years at hard labor without benefit of probation, parole, or suspension of sentence. The court recommended that the defendant receive psychiatric treatment while in prison if available.
The defendant thereafter appealed his conviction. The sole assignment of error concerns the trial court's denial of defendant's oral motion for continuance made on the day of trial. After review of the record, we see no error, and accordingly affirm the defendant's conviction.
On November 10, 1993, a customer returned to Chuck E Cheese restaurant on Veterans Highway and informed the manager, Sylvia Armentor, that "there was a man on his knees masturbating" in the parking lot. When Armentor stepped outside the restaurant, she observed the defendant kneeling down between two rows of cars. She then "saw him get up and sit on the top of a car and pull his shorts over" thereby exposing his genitals. Next, she observed the defendant fondle himself and "get back down in between the cars" where he remained for a short period of time. Thereafter, the defendant "went [and] sat back on top of the car and did it again."
After Armentor stepped back inside the restaurant and instructed an employee to call the police, she returned to the restaurant's "porch" and waited for the police to arrive. When the police failed to arrive on the scene, she walked to the adjacent K-Mart and used a public telephone located in front of the store to report the incident to the police again. While continuing to observe the defendant, she returned to the restaurant's "porch" and subsequently a police unit entered the parking lot. When the defendant began to flee, Armentor "pointed to the police officer, to show him that this was the man".
Upon observing the defendant running from the scene, Officer Guillory, the driver of the unit, pursued him. When the defendant ran behind another business located just off Veterans Highway, Officer Guillory drove to Veterans Highway but lost sight of the defendant. As Officer Guillory proceeded down Veterans Highway, he observed a vehicle backing out of a parking lot which was located approximately half a block from the scene of the incident. After he drove into the parking lot, he "realized that this was the subject that was running". Officer Guillory stopped his unit behind the defendant's vehicle, blocking his escape. He exited his unit and approached the defendant's vehicle. When he asked the defendant, who "seemed winded" to Officer Guillory, to step out of his vehicle, the defendant reached for a pair of crutches. Knowing that the defendant did not need crutches, having seen him running moments earlier, Officer Guillory pulled the defendant from his vehicle. He then placed the defendant in his unit in order to transport him to the scene for an identification. When Armentor subsequently viewed the defendant in the back of the police unit, she positively identified him as the perpetrator.
At trial Officer Guillory testified that at the time of his apprehension the defendant had previously been convicted of obscenity in case number 324-869 in Orleans Parish, case number 325-802 in Orleans Parish, and case number 87-1925 in Jefferson Parish.
The defendant's sole assignment of error contends that the trial court erred in denying appellant's motion to continue the trial. Specifically, the defendant argues that the denial of the motion for a continuance left him unable to adequately prepare a defense to the charge which was "transformed on the day of trial to an accusation that the accused was guilty of this specific act [of obscenity] and had been convicted of similar acts on three prior occasions."
The State initially charged the defendant with obscenity, but on November 29, 1994, the State filed another bill of information charging the defendant with fifth offense obscenity. On December 1, 1994, the day of trial, the State amended that bill to charge *885 the defendant with fourth offense obscenity, and when arraigned on that bill, the defendant entered a plea of not guilty to the charge. Thereafter, the following exchange occurred:
MR. DEPAOLI [Defense Counsel]:
Your Honor, for the record, on behalf of Mr. Malinda [defendant], I move for eitherwell, for a continuance of the trial, on the grounds that Mr. Malinda is now informing me that, in view of the increased penalties which are possible upon a conviction, now that he's being arraigned only today on the new charge, new charge, that now he has thought of additional defense
THE COURT:
Give me the record, Janet.
MR. DEPAOLI:
witnesses that he didn't want to use before that he may be able to use to his benefit, he wants some more time and does not wish to go to trial the same day he's arraigned on the charge. For the record, I was informed of this [filing of another bill of information] this Monday, I did discuss with my client at length on Monday; I believe he did understand that it was essentially the same facts, the same rules of law that would apply to trial, that the penalties would be enhanced, if in fact the old two convictions were authenticated by proper certified records.
MR. OLINDE [Prosecutor]:
Your Honor
MR. DEPAOLI:
But he's asking me to make the motion, and I do make it.
* * * * * *
MR. OLINDE:
Your Honor, Mr. DePaoli, pursuant to pretrial discussion in Chambers, in your Honor's Chambers, on September 30th or September 22nd, the case was pretried. He attempted to get afelt the Court out as to what it would do upon a plea of guilty. The Court responded to Mr. DePaoli, and at that time Mr. DePaoli came back in and said his client was not interested in entering a plea of guilty. At that time, the State informed Mr. DePaoli that it would in factthis is more than two months agothat it would in fact re-file another Bill of Information against the defendant, charging him with the enhanced penalties as a third offender. He's not had four days' notice, it's been two months' notice. Mr. DePaoliI think he'd probably acknowledge thishas known that for two months. We have mailed him a copy of the new Bill of Information; he knew it on Monday and said nothing; he said he'd be ready for trial today; and I've followed it up by saying he has had open file discovery, which means he's had access to the defendant's rap sheets, all the rap sheets that I have in my file, and all of the certified convictions that are in my file, and none of these are a surprise to him. None of these documents are a surprise, in the least bit, to him. There is absolutely no prejudice to the defendant going forward today, and if he says he has other witnesses which he would call, and is prejudiced by them, I would like him to state them for the record right now, please.
* * * * * *
MR. DEPAOLI:
I have received copies of thein fact, certified copies, pursuant to open file discovery, from Mr. Olinde many months ago. That's not a surprise. The last time this matter was set for trial, I filed a motion, I believe three Court days before that, approximately, asking for a continuance because my client was scheduled for surgery at Charity Hospital. At that time, I did not expect to go to trial on anything other than a 106 charge, not a second or third offender charge. I do recall that before that the general understanding between myself and the District Attorney's Office, rather specific, was that if he pled, it would be to violation of 14:106, not an enhanced penalty, but that if he did not plead, then he would be either multiple billed or some other type of enhanced penalty. He didn't go to trial, he asked for a continuance. I was never informedI really don't recall, and I'm ninety-nine point nine percent positive I was never informed until Monday, and the truth is I was surprised Monday no matter what Fred [Prosecutor], who I *886 respect highly, believesI was surprised Monday that he had filed a new bill.
In denying the motion to continue, the trial court stated the following:
"Mr. DePaoli, you asked for a continuance on the November 7th trial date. All of that information was given to you in September, either the 22nd or the 30th, both of which times the trials were set. I recall that those things were done at that point in time, and on November 7th was the date that he had surgery. All of these things were told to you in September.... the charges are the same. They have now been enhanced, because of two previous convictions which you have been aware of since the time you began in this case. I fail to understand what prejudice your client has. He knew on Monday, you knew on Monday what the enhanced penalties are...."
Initially, we note that defense counsel did not file a written motion for a continuance. The general rule is that motions for continuance be in writing (LSA-C.Cr.P. art. 707) since the denial of an oral motion for a continuance leaves nothing for review. However, there is an exception to the general rule where the circumstances producing the motion for continuance occur unexpectedly and the counsel for the defendant had no opportunity to prepare a written motion. State v. Cologne, 562 So.2d 24 (La.App. 5th Cir.1990).
Because defense counsel was aware of the State's intention to file another bill of information charging the defendant with third or subsequent offense obscenity on Monday before the Thursday trial date, defense counsel had sufficient opportunity to prepare a written motion for continuance. As such, this issue has not been preserved for review. Nevertheless, in an abundance of caution, we will address the issue.
LSA-C.Cr.P. art. 712 commits a motion for a continuance to the sound discretion of the trial judge. A denial of a motion for a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Scott, 612 So.2d 293 (La.App. 5th Cir.1992). This specific prejudice requirement will only be disregarded where the time allowed defense counsel to prepare is so minimal that the "fairness" of the proceedings is questionable. State v. Jones, 395 So.2d 751 (La.1981). The reasonableness of discretion issue turns primarily upon the circumstances of the particular case. State v. Simpson, 403 So.2d 1214 (La.1981).
In the instant case it does not appear that the time afforded defense counsel to prepare for trial was so minimal as to undermine the fairness of the proceedings. Defense counsel was retained by the defendant in September of 1994. He appeared in court with the defendant on September 30, 1994 and he was provided with copies of the defendant's previous convictions. Although on the date of trial, December 1, 1994, defense counsel indicated that he was surprised when the State filed another bill of information charging the defendant with third or subsequent offense obscenity, he never did state that he was unprepared for trial.
In addition, the defendant has failed to show any specific prejudice resulting from the trial court's denial of the motion for a continuance. Defense counsel cross-examined the State's witnesses and presented a defense. Furthermore, the defendant made no showing that he could have presented a better defense had he been given more time to prepare for the trial. Therefore, the trial court did not abuse its discretion in denying the motion for a continuance.
Appellant urges this Court to search the record for patent error and to take whatever corrective action it deems appropriate.
A review of the record reveals the following errors:
1.) The sentencing transcript shows that the trial court failed to give the defendant credit for time served prior to the imposition of sentence; however, such an allowance is mandatory. LSA-C.Cr.P. art. 880; State v. Sherman, 532 So.2d 908 (La.App. 5th Cir. 1988). Therefore, we remand so that the sentence can be amended to give the defendant such credit.
2.) LSA-C.Cr.P. art. 930.8 dictates that, except under certain limited circumstances, *887 a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C of the article provides that "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." The transcript of the defendant's sentencing on January 26, 1995 reflects that the defendant was not so informed. However, failure to inform the defendant does not constitute a ground for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. art. 921. Rather, the appropriate remedy is to instruct the trial court to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5th Cir. 1/14/94), 643 So.2d 1289.
Therefore, for the reasons assigned, we affirm the defendant's conviction. We remand the matter with instructions for the trial court to reflect the defendant's credit for time served and for appropriate notice to be given of the delays for seeking post conviction relief as per above.
CONVICTION AFFIRMED AND REMANDED WITH INSTRUCTIONS ON SENTENCE.
NOTES
[1] The obscenity statute, LSA-R.S. 14:106, provides in pertinent part:

G. (3) On a third or subsequent conviction, the offender shall be imprisoned with or without hard labor for not less than two years nor more than five years, without benefit of probation, parole, or suspension of sentence, and in addition may be fined not less than five thousand dollars nor more than ten thousand dollars.