695 So.2d 1039 (1997)
STATE of Louisiana
v.
Reginald RAYMOND.
No. 97-KA-81.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
*1040 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant Dist. Atty., Gretna, for Plaintiff-Appellee.
W.R. Campbell, Louisiana Appellate Project, New Orleans, for Defendant-Appellant.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
The Jefferson Parish District Attorney filed a bill of information on May 3, 1996, charging defendant, Reginald Raymond, with two counts of distribution of cocaine, in violation of LSA-R.S. 40:967A. At the May 15, 1996 arraignment, defendant pled not guilty. The charges proceeded to trial before a twelve person jury on June 6, 1996. After considering the evidence presented, the jury found defendant guilty of both counts of distribution of cocaine.
On June 26, 1996, the state filed a bill of information pursuant to LSA-R.S. 15:529.1 seeking to have defendant adjudicated a multiple offender and sentenced accordingly. On the same day that the bill was filed, defendant pled not guilty[1] and the court conducted a hearing on the multiple offender bill of information. After considering the evidence presented, the judge adjudicated defendant a fourth felony offender and sentenced him on the first count to seventy-five (75) years at hard labor without benefit of probation, parole or suspension, pursuant to the provisions of LSA-R.S. 15:529.1. On the second count, the trial judge sentenced defendant to ten (10) years at hard labor to run concurrently with the sentence imposed in count one.
Defendant thereafter filed a motion to reconsider sentence and a motion for appeal. The trial judge granted defendant's motion for appeal on July 2, 1996, and subsequently denied his motion to reconsider sentence on December 13, 1996.

FACTS
In August of 1994, Sergeant Joe Williams of the Jefferson Parish Sheriff's Office, received information from a confidential informant, who had proved very reliable in the past, relative to individuals selling crack cocaine in the Marrero area. Upon receiving this information, Sergeant Williams contacted Agent Michael Jackson and requested that he go in an undercover capacity and attempt to purchase some crack cocaine.
On August 12, 1994, after being equipped with a transmitter and given $250.00, Agent Jackson, accompanied by the confidential informant, proceeded to Teenie's Bar located in the 6200 block of Field Street in Marrero. Upon their arrival shortly after 3:00 p.m., Agent Jackson parked the car, at which time both he and the confidential informant exited the vehicle. The confidential informant introduced the undercover officer to defendant but then moved away so as not to be involved in the transaction. Agent Jackson told defendant that he wanted to buy $250.00 worth of crack cocaine. Defendant handed the officer a matchbox which contained approximately 2.6 grams of cocaine, and after looking inside, the officer handed defendant $250.00. Following completion of the transaction, Agent Jackson went to a pre-arranged location and turned the evidence over to Officer Williams who performed a preliminary field test on the substance. Having proved positive for the presence of cocaine, Officer Williams then processed the evidence and secured it in the evidence locker to await further analysis by the crime laboratory. The results of that subsequent testing proved positive for the presence of cocaine. Agent *1041 Jackson positively identified defendant both in a photographic lineup conducted after the transaction and at trial as the individual from whom he purchased the cocaine.
The second undercover transaction occurred on August 15, 1994, and was similar in nature to the first transaction. On that evening, Agent Jackson, equipped with a transmitter and carrying $250.00, proceeded to Teenie's Bar in the 6200 block of Field Street in Marrero. Upon his arrival, sometime between 5:30 and 6:00 p.m., Agent Jackson parked his vehicle; however, before he had a chance to exit his car, defendant approached and asked if he wanted some more crack cocaine. When the officer replied in the affirmative, defendant gave the officer thirteen rocks of crack cocaine, and the officer, in exchange gave defendant $250.00. After the purchase, Jackson met Officer Williams at a pre-arranged location and turned over the evidence. Williams performed a preliminary field test on the substance and it proved positive for the presence of cocaine. Williams then processed the evidence and secured it at the detective bureau pending transport to the crime lab for analysis. The results of the subsequent analysis revealed the presence of cocaine.[2] Regarding the identity of the seller of the cocaine, Jackson informed Officer Williams that he made the purchase from the same individual that he bought the narcotics from on August 12, 1994. Also, Jackson identified defendant in court as the individual from whom he purchased the cocaine.
At trial, defendant called one witness, Reverend Davis, to testify in his behalf. Reverend Davis testified that he is the operations director for Filema after-care facility, which was designed to assist former inmates with their re-integrating back into society. Although he was unable to produce any records, Reverend Davis claimed that defendant was enrolled in that facility in August of 1994. Davis further testified that the participants followed daily schedules and needed permission in order to leave the facility, although he admitted that defendant sometimes left without permission. According to Reverend Davis, defendant had a serious problem with the consumption of drugs not the sale of drugs and further testified that if defendant had money, he had a propensity to spend it on cocaine for personal consumption.
On cross-examination, Reverend Davis admitted that he could not verify where defendant was on the afternoons of August 12 and 15, 1994. He also acknowledged that defendant or any of the other individuals in his facility could actually leave without permission.
After considering the evidence presented, the jury found defendant guilty of two counts of distribution of cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court committed reversible error by forcing appellant to trial in leg shackles.

DISCUSSION
In the present case, prior to the selection of the jury, the following discussion occurred about the defendant being shackled during the trial:
THE COURT:
All right, now, let's put some stuff on the record here.
Mr. Raymond, I've allowed your hands to be unshackled, against better advice. I probably should keep them shackled, but I am not going to.
If there is any problem whatsoever, I'm going to have you shackled; do you understand that? Case law is very clear. Now, you're going to keep the shackles on your feet, to which your attorney can raise and[sic] opposition. That's fine. You can make it known.
Any shenanigans at all, and you are going to be shackled; is that understood completely? Do you understand that?
MR. RAYMOND:
He's going to
MR. FLEMING:

*1042 Your Honor, Mr. Raymond previously has asked to be appointed and the Court has granted his request, to be co-counsel in this case.
THE COURT:
Uh-huh.
MR. FLEMING:
And for that reason, he wishes to address the jury, making an opening statement. I think it's going to be very prejudicial if they see him walking about the courtroom in shackles, and
THE COURT:
All right, Mr. Fleming. It's noted. However, he will wear shackles to address the jury.
MR. FLEMING:
Well, Your Honor, before the jury is brought in, I respectfully move for a mistrial.
THE COURT:
I don't think there's any grounds. So far, there's no grounds. We haven't even picked a jury, but even when we start picking the jury, you can make the motion; I'm going to deny it.
MR. FLEMING:
Yes, sir.
THE COURT:
All right?
MR. FLEMING:
Secondly, Your Honor, the Court had asked me to inquire from Mr. Raymond if he was willing to take an offer of fifteen years on a double bill, on this charge, and, in return, the State would dismiss the attempt murder charges.
Mr. Raymond wishes to exercise his right to a trial.
THE COURT:
No problem. Now, Mr. Fleming, are you representing to this Court that you feel that Mr. Raymond is absolutely safe to be allowed to walk freely in this courtroom?
MR. FLEMING:
Well, Your Honor
THE COURT:
If you'd rather not answer, you don't have to answer.
MR. FLEMING:
He hasn't demonstrated any misbehavior today.
MR. GRANT:
I would state, Judge, as far as his opening statements are concern[ed], he can stand right there with the handwith the cuffs and leg shackles on him and the jury won't even see it.
Now, if he chooses to walk over here and demonstrate the shackles to the jury, then, you know, it's up to him. He can avoid the jury seeing it, Your Honor.
I know the Court's very familiar with this gentleman's rap sheet, as per our pre-trial conferences, and there may be a propensity for violence, Your Honor.
THE COURT:
I'm going to exercise
MR. RAYMOND:
Excuse me. I don't have no violence on my record though.
THE COURT:
my right not to allow him to do that, Mr. Fleming.
MR. RAYMOND:
Excuse me, Your Honor. I would like to note that I don't have violence on my record, so how can they say I'm violent. I have never been convicted on no type of
THE COURT:
And, also, Mr. Fleming, if there is a scene, if, per chance he happens to trip on the way up there, we will deal with that. Okay?
MR. FLEMING:
Yes, sir.
THE COURT:
So, my suggestion is you walk carefully over there.
MR. RAYMOND:
Your Honor, but they still will see me in shackles and I will stillsince I am co-counsel, I have no problem with it, Your Honor.
THE COURT:
Let's bring the jury in.
MR. RAYMOND:

*1043 We bothnote that we object, Your Honor.
During trial, defendant re-urged his motion for mistrial based on being forced to stand trial in shackles. The trial judge denied this motion. Defendant now claims that the trial judge committed reversible error by forcing him to trial in leg shackles. He claims that he suffered prejudice as a result of this ruling because the shackles prevented him from leaving the table in order to question witnesses or address the jury in his capacity of co-counsel.
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State ex rel. Cockerham v. Butler, 515 So.2d 1134 (La.App. 5 Cir.1987). However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State v. Wilkerson, supra. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State v. Wilkerson, supra.
In State v. Tasby, 26,103 (La.App. 2 Cir. 6/24/94), 639 So.2d 469, writ denied, 94-2256 (La.1/13/95), 648 So.2d 1336, the court concluded that the use of restraint consisting of a thin chain between defendant's ankles during his trial for second degree murder, was not an abuse of discretion. The leg restraint had been ordered because of defendant's disruptive behavior in jail and his physical confrontations with sheriff's deputies and prosecutors. Additionally, every effort was made to insure that the chain would not be seen by the jury.
In State v. Calhoun, 554 So.2d 127 (La. App. 2 Cir.1989), writ denied, 558 So.2d 601 (La.1990), the court concluded that the trial judge did not abuse his discretion in ordering defendant placed in leg restraints. Based on the reports of disciplinary problems by the defendant while in jail and his alleged plans to escape, the district court reasonably believed the shackles were a necessary precaution. In addition, every possible step was taken to insure that the jury did not see the defendant's restraints. The appellate court also observed that even if the trial judge had erred in requiring the defendant to wear restraints, there was nothing contained in the record to show that the jury saw the leg restraints, and thus, defendant did not demonstrate that any prejudice resulted from his legs being shackled. See also State v. Plater, 26,252 (La.App. 2 Cir. 9/21/94), 643 So.2d 313, writ denied, 94-2608 (La.2/3/95), 649 So.2d 402.
In the present case, there is no showing that the use of the leg shackles prejudiced the accused. The trial judge allowed defendant's handcuffs to be removed and also allowed defendant to dress in regular clothes during trial. However, due to safety concerns, the trial judge felt that it was necessary to keep defendant in leg shackles. There is nothing contained in the appellate court record to indicate that the jury saw the leg shackles or that the shackles hampered the presentation of defendant's case in any way. Thus, defendant has not suffered any prejudice as a result of his legs being shackled. Based on the foregoing discussion, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court committed reversible error by sentencing appellant as a four-time offender pursuant to La. R.S. 15:529.1 despite insufficient evidence of prior guilty pleas.

DISCUSSION
By this assignment, defendant argues that the evidence presented at the multiple offender hearing was insufficient to adjudicate him a fourth felony offender. At the June 26, 1996 multiple offender hearing, the state attempted to prove defendant's status as a fourth felony offender. Toward that end, the state introduced numerous exhibits, including the arrest registers (State Exhibits 3, 5, and 7) and the bills of information (State Exhibits 4, 6, and 8) from the three prior felony convictions.
*1044 In addition to the introduction of the exhibits, Merril Boling, commander of the latent fingerprint division of the Jefferson Parish Sheriff's Office, testified as an expert in the field of fingerprint analysis. After comparing fingerprints, he testified that the fingerprints in State Exhibits 3,5, and 7 matched those of defendant that he took prior to the multiple offender hearing (State Exhibits 1 and 2).
After considering the evidence presented, the judge found defendant to be a fourth felony offender and sentenced him on count one of the original bill of information to 75 years at hard labor without benefit of probation, parole or suspension of sentence.
Defendant now complains that the trial judge erred in adjudicating him to be a multiple offender because there was insufficient evidence of the prior guilty pleas. Defendant specifically claims that there was no showing as to his valid waiver of rights during the three prior guilty pleas set forth in the multiple offender bill of information. In connection with that claim, defendant also alleges that it is impossible to determine from the record whether he was represented by counsel when pleading guilty to the prior offenses. In addition, defendant contends that the state failed to prove the cleansing period set forth in LSA-R.S. 15:529.1(C) had not elapsed with respect to the prior offenses, and that the state introduced no evidence as to his actual dates of discharge.
In order to prove a defendant is a multiple offender, the state need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Simmons, 95-309 (La.App. 5 Cir. 10/18/95), 663 So.2d 790. In State v. Shelton, 621 So.2d 769, 779-780 (La. 1993), the Louisiana Supreme Court discussed the burden of proof in multiple offender proceedings as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. [footnote omitted]
In addition, LSA-R.S. 15:529.1D(1)(b) sets forth the burden of proof as follows:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made *1045 before sentence is imposed may not thereafter be raised to attack the sentence.
In the present case, the transcript indicates that the arrest registers and the bills of information from the three prior convictions were introduced at the multiple offender hearing. In the exhibits that were filed in this court, there is a waiver of rights form, a commitment, and a minute entry which is attached to each of the three bills of information. These additional documents show that defendant pled guilty to three prior felony offenses, after being duly cautioned as to his rights. They also show that defendant was represented by counsel at the time that he entered each of the three prior guilty pleas. However, there is no indication that these exhibits were introduced at the multiple bill hearing. If, in fact, these exhibits were not introduced, then the state failed in its burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel when the pleas were entered. Accordingly, the habitual offender adjudication is vacated and the matter remanded for further proceedings.

DECREE
The defendant's conviction is affirmed and his adjudication and sentence as a fourth felony offender is vacated and the case is remanded for further proceedings.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; CASE REMANDED.
NOTES
[1] While the minute entry from June 26, 1996 indicates that defendant pled not guilty to the multiple offender bill of information, the transcript which is contained in the appellate court record does not reflect such an arraignment.
[2] In lieu of the testimony of the chemist who performed the analysis and the chain of custody witnesses, the prosecutor and defense counsel stipulated that State Exhibit Numbers 1 and 2 were, in fact, cocaine. They also stipulated to the chain of custody of the evidence which was taken on August 12 and 15, 1994.