735 So.2d 888 (1999)
STATE of Louisiana
v.
Pollis J. HERNANDEZ.
No. 98-KA-448.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
*890 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Deborah A. Villio, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Laurie A. White, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
GOTHARD, Judge.
Defendant, Pollis Hernandez, brings this appeal after his conviction and sentence resulting from a charge of second degree murder. For reasons that follow, we affirm.
*891 On May 1, 1997, the Jefferson Parish Grand Jury indicted the defendant, Pollis Hernandez, and co-defendant, Harry Dempster, for the second degree murder of Donna D. Comardelle, a violation of LSA-R.S. 14:30.1. After pleading not guilty at his arraignment, the defendant filed a motion to appoint a sanity commission to determine his competency to stand trial. Subsequently, the defendant changed his plea from not guilty to not guilty by reason of insanity. The motion to determine the defendant's competency to stand trial came before the court on September 16, 1997 and, in defendant's absence, the trial court found the defendant competent to stand trial.
On October 27, 1997, the trial court granted the State's Prieur[1] motion, allowing evidence of "other crimes" to be admitted at trial. Also on that date, the trial court denied the defendant's motion to reconsider competency, and ordered the defendant to remain shackled to his chair in court, with his hands visible, for the duration of the trial. After a trial, the jury returned a verdict of guilty as charged. In due course, the trial court sentenced the defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant filed a timely appeal.
The defendant was convicted of the second degree murder of his ex-wife, Donna Comardelle. Evidence presented at trial shows that the defendant went to the victim's workplace and, in full view of her coworkers, opened a package, withdrew a gun, and shot her in the back. The force of the bullet spun her around and Ms. Comardelle fell to the ground on her back. Defendant stood over her and shot her again, this time hitting her in the arm and breast. Defendant then got into a car driven by the co-defendant, Harry Dempster, and the two sped off. Ms. Comardelle was taken to a nearby hospital where she was pronounced dead.
Mr. Dempster cooperated with police investigators and helped them find the package, wrapping paper, and gun used by the defendant in the crime and discarded afterward. The defendant was subsequently arrested at the home of his uncle.
On appeal defendant assigns three errors and requests a review of the record for errors patent. In the first assignment, he argues the competency hearing was constitutionally infirm. His argument on this assignment is based on three issues; his absence at the hearing, the correctness of the finding that he was competent, and the denial of a defense motion to continue the hearing for the collection of evidence to rebut the trial court's determination of competency.
The record shows that immediately prior to the competency hearing, the defendant was disruptive in the courtroom and was physically removed. Defense counsel waived the defendant's presence and the hearing was conducted. Defendant argues that his absence at the competency hearing renders the hearing constitutionally infirm.
LSA-C.Cr.P. art. 831, which lists the proceedings at which the defendant must be present, does not include competency hearings. Further LSA-C.Cr.P. art. 834 provides that, although a defendant has a right to be present, a defendant's "presence is not essential to the validity of any of the following proceedings in a criminal prosecution ... the making, hearing of, or ruling on a preliminary motion or application addressed to the court." The hearing to determine mental competence in this case was the result of a preliminary motion filed and heard before trial. LSC.Cr.P. arts. 642 and 647. Accordingly, the defendant's presence is not statutorily required if his counsel is present. State v. McClintock, 535 So.2d 1231 (La.App. 3 Cir. 1988).
Although the defendant's presence at the competency hearing was not required *892 by statute, he cites Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934) and its progeny for the proposition that his presence at the hearing was a due process right, which could not be waived by counsel without his consent. The Louisiana Supreme Court addressed this issue in State v. Kahey, 436 So.2d 475 (La.1983), stating:
Presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only. Therefore, the presence of the defendant is only essential at proceedings which have a reasonably substantial relation to the fullness of the opportunity of the defendant to defend against the charge. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). From this principle has emerged the general rule that no claim of error, or at least no claim of prejudicial error, can be based upon the exclusion or absence of a defendant, pending his trial on a criminal charge, from the courtroom, or from the conference between court and attorneys, during argument on or discussion of a question of law. See C. Torcia, Wharton's Criminal Procedure Sec. 483 at 342 (12th ed.1975); 85 A.L.R.2d 1111, 1114. Cf. State v. Monk, 315 So.2d 727 (La.1975); State v. Leblanc[Le Blanc], 116 La. 822, 41 So. 105 (1906); State v. Pierre, 39 La.Ann. 915, 3 So. 60 (1887).
The Louisiana rule affords the defendant greater rights. Louisiana Code of Criminal Procedure article 834 provides that the defendant has the right to be present during the making, hearing of, or ruling on a preliminary motion or application addressed to the court. But this right may be waived by the defendant or his attorney, by his voluntary absence or his failure to object to argument or discussion during his absence. See, Deschenes v. United States, 224 F.2d 688 (10th Cir.1955). Cf. LSAC. Cr.P. art. 831(6); Torcia, supra, at 388, 342.
Kahey, supra at 483-84.
The defendant's presence was waived by his attorney, and the defendant fails, on appeal, to show how he was prejudiced by his absence. Accordingly, the trial court did not commit reversible error by holding the competency hearing in his absence.
In the second part of the argument of the validity of the competency hearing, defendant argues that the trial court erroneously determined that he was competent to stand trial.
The determination of a defendant's competency to stand trial is governed by LSA-C.Cr.P. art. 641 which provides, "(m)ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." The two-part test of capacity to stand trial under this article is: 1) whether the accused understands the consequences of the proceedings, and 2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129, 1138 (La.1977).
Defendant uses State v. Bennett, supra, as the basis for his assertion that the trial court erred in finding him competent to proceed. He argues that the court failed to use the factors set forth by the Louisiana Supreme Court in Bennett to be used in determining competency which are as follows:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and *893 whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
Bennett, supra, 345 So.2d at 1138.
There is a presumption under Louisiana law that a defendant is sane, and the defendant therefore bears the burden of proving he is incapable of standing trial due to a mental disease or defect. State v. Bennett, supra. LSA-C.Cr.P. art. 648A, as amended by 1990 La. Acts No. 755, provides that the court must determine "by clear and convincing evidence" that the defendant lacks the capacity to proceed. However, the Supreme Court in Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), determined that the "clear and convincing" standard of article 648A violates the Due Process Clause. Cooper has returned Louisiana to the jurisprudential rule that a criminal defendant need prove his incapacity to proceed by only a preponderance of the evidence. State v. Brooks, 541 So.2d 801, 805 (La.1989). See also, State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365.
A court is permitted to receive the assistance of expert medical testimony on the issue of a defendant's mental capacity to proceed. However, the ultimate decision of competency is the court's alone. LSA-C.Cr.P. art. 647; State v. Bibb, 626 So.2d 913, 927-928 (La.App. 5 Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188; reconsideration denied, 93-3127 (La.10/28/94), 644 So.2d 648. The final determination of a defendant's competency to stand trial rests with the trial judge and not the medical examiners. It is a legal and not a medical issue. State v. Qualls, 377 So.2d 293 (La.1979). Further, the trial court's ruling on a defendant's mental capacity to proceed is entitled to great weight on appellate review and will not be reversed absent an abuse of discretion. State v. Bibb, supra, 626 So.2d at 928; State v. Armant, 97-1256 (La.App. 5 Cir 5/27/98), 719 So.2d 510, writs denied 98-1909 (La.11/20/98), 729 So.2d 4; 98-1884 (La.11/20/98), 729 So.2d 3.
In the instant case the State presented the testimony of Dr. Ellen Gandle, a forensic psychiatrist. Dr. Gandle testified that she attempted to interview the defendant on three occasions. She told the court that on the occasions in which she had tried to examine the defendant he was crying and "rocking" and not communicative. Because of a lack of cooperation from the defendant, Dr. Gandle was unable to review the Bennett criteria with the defendant, or to perform a mental status examination. However, Dr. Gandle testified that she had prison deputies observe the defendant. She told the court that the defendant's behavior during these observations was normal, and, when under the deputy's observation, he did not exhibit the symptoms of crying, rocking, or inability to communicate. It was Dr. Candle's opinion that, because of the discrepancy between the defendant's presentation during the interviews and the collateral information received, the defendant was exaggerating his psychiatric symptoms.
Deputy Elvie Russell had observed the defendant. He told the court that he did not observe any "rocking" or crying behavior and that the defendant did not appear to be distraught. He told the court that *894 the defendant was curious about when he was going to meet with the psychiatrist. Deputy Ray Walker corroborated Deputy Russell's testimony, noting he did not see any unusual behavior from the defendant.
Finally, Dr. Richard Richoux, the psychiatrist for the Jefferson Parish Correctional Center, testified. He told the court that he had interviewed the defendant several times and that, although the defendant exhibited signs of depression, it was the doctor's opinion that the defendant was attempting to simulate a major mental illness.
The trial court, upon evaluating the testimony presented, found the defendant competent to stand trial. The defendant argues that the trial court committed reversible error when it made a competency determination absent the defendant being questioned as to the Bennett criteria. However, the final determination of the defendant's competency is a legal, and not a medical issue. The trial court apparently believed that the defendant was attempting to simulate a mental illness. The Louisiana Supreme Court, in a similar case, where the defendant appeared otherwise competent, upheld a trial court's determination of competency stating that "a defendant cannot prove the incapacity to stand trial merely by having stymied the efforts of the sanity commission." State v. Holmes, 393 So.2d 670, 674 (La.1981). It appears, from a reading of the record, that the defendant in this case acted normally, except when being interviewed by members of the sanity commission. Accordingly, we find no error in the trial court's determination of competency.
In the final part of this argument defendant asserts the trial court erred in failing to grant the defendant's motion for continuance made after the competency hearing.
Prior to the trial court's determination of competency, defense counsel asked that the court postpone a determination until he could be evaluated under the Bennett criteria. Defense counsel further asked for the trial to be continued so that he could obtain records from the defendant's previous incarceration in two hospitals. On appeal, defense counsel asserts that the trial court erred in not holding the sanity hearing open because the medical records were necessary for an adequate determination of the defendant's competence to stand trial. However, a review of the record reflects that defense counsel requested the records for the purpose of a defense at trial, not for a redetermination of competence. Defense counsel asked the court to postpone the determination of competency so that the defendant could be evaluated under the Bennett criteria. The trial court denied that request.
The Louisiana Supreme Court in State v. Charles, 450 So.2d 1287, 1290 (La. 1984) has held that, when a defendant is found otherwise competent, it was not reversible error for the trial court to refuse defendant's request for continuance and redetermination of competency. See also, State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651, 675.
In consideration of the denial of the motion to continue the trial until the records had been received, we note that a motion for a continuance must be made in writing and allege the specific grounds upon which it is based. LSA-C.Cr.P. art. 707. However, when circumstances producing the motion for continuance occur unexpectedly and there is no opportunity to prepare a written motion, there is a jurisprudential exception to the requirement for a written motion. State v. Malinda, 95-292 (La.App. 5 Cir. 10/31/95), 663 So.2d 882, 886. As a general rule, a motion for a continuance must be made within seven days prior to trial. Id. Nevertheless, in the interest of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing.
On September 16, 1997, four days prior to trial, defendant made an oral motion for a continuance, which the trial court denied. *895 There are no unexpected circumstances that prevented defendant from filing a written motion, as the defendant was certainly aware he had not received an answer to his subpoena for the medical records. In fact, the record reflects that defense counsel had an opportunity to file a written continuance motion on other grounds.[2]
The denial of an oral motion for continuance leaves nothing for the appellate court to review. State v. Malinda, supra, 663 So.2d at 886. Accordingly, the denial of the September, 1997 motion for continuance has not been preserved for review on appeal. See, State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
Further, as the trial did not commence until October 29, 1997, six weeks after the continuance was requested, the defendant fails to show how he was prejudiced by the denial, and thus the denial did not constitute reversible error. See, LSA-C.Cr.P. art. 712; State v. Wilson, 96-251 (La.App. 5 Cir. 10/1/96), 683 So.2d 775.
For the foregoing reasons, we find no error in the competency hearing nor its outcome.
In his second assignment of error, the defendant avers that the trial court erred by ordering him to have his legs shackled to the table throughout the trial.
Prior to trial the State made a motion to have the defendant shackled throughout the trial. The State's motion was based upon an incident in which the defendant attempted to attack a deputy in jail, the defendant's actions in the courtroom prior to the competency hearing, and the defendant's history of violence. The trial court held a hearing on the matter. During the hearing, Lt. Gerber of the Jefferson Parish Correctional Center told the court that the defendant was classified as a "high security risk inmate" because the defendant was found in possession of a "shank", a homemade weapon. Lt. Gerber also told the court that the defendant had allegedly tampered with a prison window and a fence in the prison yard, and allegedly told the other inmates that he would do anything, including stabbing an officer, to break out of jail. Based upon this information, and the defendant's actions in the courtroom, the trial court ordered the defendant's legs to be shackled to his chair throughout the trial.
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Raymond, 97-81 (La.App. 5 Cir. 5/28/97), 695 So.2d 1039. However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State v. Wilkerson, supra. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State v. Wilkerson, supra. This court in State v. Raymond, supra, found that leg shackles did not prejudice the defendant:
In State v. Tasby, 26,103 (La.App. 2 Cir. 6/24/94), 639 So.2d 469, writ denied, 94-2256 (La.1/13/95), 648 So.2d 1336, the court concluded that the use of restraint consisting of a thin chain between defendant's ankles during his trial for second degree murder, was not an abuse of discretion. The leg restraint had been ordered because of defendant's disruptive behavior in jail and his physical confrontations with sheriff's deputies *896 and prosecutors. Additionally, every effort was made to insure that the chain would not be seen by the jury.
In State v. Calhoun, 554 So.2d 127 (La. App. 2 Cir.1989), writ denied, 558 So.2d 601 (La.1990), the court concluded that the trial judge did not abuse his discretion in ordering defendant placed in leg restraints. Based on the reports of disciplinary problems by the defendant while in jail and his alleged plans to escape, the district court reasonably believed the shackles were a necessary precaution. In addition, every possible step was taken to insure that the jury did not see the defendant's restraints. The appellate court also observed that even if the trial judge had erred in requiring the defendant to wear restraints, there was nothing contained in the record to show that the jury saw the leg restraints, and thus, defendant did not demonstrate that any prejudice resulted from his legs being shackled. See also State v. Plater, 26,252 (La.App. 2 Cir. 9/21/94), 643 So.2d 313, writ denied, 94-2608 (La.2/3/95), 649 So.2d 402. In the present case, there is no showing that the use of the leg shackles prejudiced the accused. The trial judge allowed defendant's handcuffs to be removed and also allowed defendant to dress in regular clothes during trial. However, due to safety concerns, the trial judge felt that it was necessary to keep defendant in leg shackles. There is nothing contained in the appellate court record to indicate that the jury saw the leg shackles or that the shackles hampered the presentation of defendant's case in any way. Thus, defendant has not suffered any prejudice as a result of his legs being shackled.
State v. Raymond, 695 So.2d at 1043
In the instant case, the defendant made a motion for mistrial on the supposition that some of the jurors had seen the defendant in shackles. That motion was denied by the trial court. A review of the record reveals that the defendant failed to show any evidence that the jurors had in fact seen the defendant in shackles. Accordingly, taking into account the testimony relative to the defendant's security risk, the defendant's behavior in the courtroom, and absent any specific showing of prejudice or even information that the defendant had been seen in shackles, the trial court did not abuse its discretion.
In the third assignment, defendant argues the trial court erred when it admitted other crimes/bad acts into evidence, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 2 and 16 of the Louisiana Constitution of 1974. This argument is made in two parts:
A. The State failed to meet its burden of proof at appellant's Prieur hearing.
B. The State introduced other crimes/ bad acts evidence at trial which had not been subject to a pre-trial determination of admissibility.
As to the issue of whether the State made a sufficient showing under State v. Prieur, 277 So.2d 126 (La.1973), the defendant argues that the testimony of Desiree Comardelle, Rose Dufrene and Detective Zeller regarding prior threats made by the defendant to the victim, was improperly admitted at trial because the trial court applied the improper burden of proof when considering the admissibility of other crimes evidence at the Prieur hearing. The defendant also argues that the aforementioned testimony was admitted only for the purpose of showing that the defendant was a bad person.
At trial Desiree Comardelle, the victim's thirteen-year-old daughter, told the jury that she, her mother, and two brothers had moved to 1001 Kindler Street in Luling on March 9, 1997. She testified that on the evening of March 9th, the defendant showed up in their yard, and started chasing her and her mother. Desiree testified that the defendant told her mother that he was going to kill her if she left him, and *897 that if "he couldn't have her, nobody could." Desiree told the jury that her mother was afraid to go to work the next morning, because "she knew something was going to happen." She told the jury that the defendant had physically abused her mother at least twice a week during the marriage.
The victim's mother, Rose Dufrene, told the court that the victim and her three children had been living with her for five months prior to the victim's murder. Ms. Dufrene testified that, while Donna was living with her, her family slept with guns near the beds because of the defendant's threats. Ms. Dufrene also told the jury that Donna had moved to 1001 Kindler Street the day before her murder.
Detective Christopher Zeller of the St. Charles Parish Sheriff's Office testified that on March 9, 1997, he responded to two complaints from the victim. Detective Zeller told the jury that Ms. Comardelle called the police at approximately 7:00 p.m. to report a burned out light bulb behind her residence at 1001 Kindler Street in Luling. Detective Zeller testified that Ms. Comardelle was concerned because she was afraid that her estranged husband, the defendant, Pollis Hernandez, had tampered with the bulb and was in the vicinity. Detective Zeller further testified that he received a second complaint that night from Ms. Comardelle, and a complaint from Clarence Campbell, the next-door neighbor. Mr. Campbell called 9-1-1 to report an altercation between Donna Comardelle and the defendant. Detective Zeller talked to Ms. Comardelle who explained that her estranged husband had climbed through the fence in her backyard and chased her. She told Detective Zeller that she had a verbal altercation with the defendant. Detective Zeller attempted to locate the defendant, but was unsuccessful. The Detective was informed the following day that Ms. Comardelle was the victim of a homicide.
Generally, evidence of other crimes, or bad acts, is not admissible. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Silguero, 608 So.2d 627 (La.1992). These exceptions are codified in LSA-C.E. art. 404(B)(1) which provides in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
One of the above enumerated factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146 (La.1993).
In State v. Prieur, supra, the court set out the requirements for admission of such evidence. Prieur requires the State, within a reasonable time before trial, to furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. In the written statement the State must specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses. Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, *898 is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered. Prieur, supra, 277 So.2d at 130.
After showing that the required notice is in conformity with Prieur, the State must show that defendant committed the other crimes. Prieur, supra, 277 So.2d 126. Prieur requires the State to show that the defendant committed the other crimes by clear and convincing evidence. However, LSA-C.E. art. 1104, enacted in 1994, requires that the burden of proof for a Prieur hearing in Louisiana be identical to that required by the Federal Rules of Evidence Art. IV, Rule 404. Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) interprets the federal rule. Huddleston states that the clear and convincing standard is no longer required as the standard of proof. The Huddleston court held that evidence of prior convictions need only be proved by a preponderance of the evidence:
We conclude that [Rule 404(b) ] evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.... The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.
485 U.S. at 685, 690, 108 S.Ct. at 1499-1501.
The defendant argues "[L]ouisiana case law continues to follow the interpretation that the clear and convincing burden of proof relative to the introduction of other crimes evidence is the standard." The defendant cites State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, cert. denied, ___ U.S. ___, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998), for the proposition that clear and convincing evidence is the burden of proof in Prieur hearings. However, in Williams, there was a dispute as to the burden of proof to be used, when the trial court found "a preponderance of clear and convincing evidence in connection with the [s]tate's Prieur motion." State v. Williams, 708 So.2d at 725. The Williams court did not find that "clear and convincing" evidence was the standard to be used. Rather, the court found that, in the Williams case, the State had met even the clear and convincing burden, therefore the evidence was admissible. In fact, the Supreme Court has stated that they have not yet addressed the issue. State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, states in a footnote:
Article 1104 of the Louisiana Code of Evidence was added in 1994 to provide that "[t]he burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." This Court has not yet addressed the extent to which Article 1104 and the burden of proof established in Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) has affected the burden of proof required for the admissibility of other crimes evidence. [Emphasis added]
However, the Huddleston court clearly states "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." Huddleston, supra, 485 U.S. at 690, 108 S.Ct. at 1501. Furthermore, the defendant completely ignores the law of this circuit which definitively recognizes that the preponderance of the evidence standard is the correct burden of proof in a Prieur hearing. State v. Guidroz, 98-377 (La.App. 5 Cir. 10/14/98), 721 So.2d 480, writ denied, 98-2874 (La.2/26/99), ___ So.2d ___, 1999 WL 123346; State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207. Accordingly, in this circuit, the correct burden of proof in a Prieur *899 hearing is preponderance of the evidence.
We find that in the instant case, the State properly complied with the notice requirement noting its intention to prove similar acts by the defendant by introducing "prior abuse by the defendant, Hernandez, on the victim including physical abuse, threats, harassment, and stalking, which acts occurred during the year preceding and leading up to her murder by defendant, Hernandez".
The defendant argues that the State was erroneously allowed to use the term "stalking" regarding the March 9, 1997 incident. However, although there was discussion about the term prior to the hearing, there is no evidence in the record that this term was used during the hearing or, more importantly, during trial. Thus, the defendant can show no prejudicial effect. However, the defendant argues that because the State did not prove "stalking," the State somehow failed to meet their burden of proof to show that the incident of March 9, 1997 occurred. The defendant also argued that the State failed to meet its burden of proof showing that the defendant had abused the victim. During the October 29, 1997 Prieur hearing, the State introduced the testimony of the victim's daughter, Desiree Comardelle, who told the court that the defendant threatened her mother and hit her at least twice a week when they were living together. Desiree told the court about an incident on March 9, 1997, when the defendant appeared at her home and chased her mother, Donna Comardelle. The State also presented the testimony of Detective Zeller, who told the court that he responded to an incident where the defendant, despite a restraining order, approached the victim on March 9, the night before the murder. Detective Zeller also told the court of two St. Charles Parish incident reports, corroborating the incidents which the State offered into evidence. The State also offered into evidence a judgment from the 29th Judicial District Court granting a protective order against the defendant, and the testimony of the victim's mother, Rose Dufrene, who told the court that the defendant had made harassing phone calls to the victim, threatening to kill her.
This direct testimony, along with the incident reports, should be sufficient to meet the State's burden of showing that the March 9, 1997 incident occurred, the physical abuse occurred, and that the defendant was the perpetrator of the incidents.
In the second part of this assignment, the defendant specifies several instances in which inadmissible other crimes evidence was allegedly admitted at trial. The defendant complains about the testimony of Detective Zeller and the testimony of the victim's father, Wilbur Dufrene. The defendant did not lodge contemporaneous objections to these witnesses' testimony, nor did he request an admonition or a mistrial. LSA-C.Cr.P. arts. 770 and 771. LSA-C.Cr.P. art. 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La.4/4/94), 637 So.2d 450, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. This rule applies to objectionable evidence of other crimes. State v. Guidroz, 498 So.2d 108 (La.App. 5 Cir.1986); State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. Although defense counsel objected to Mr. Dufrene's testimony later in the trial during the testimony of the next witness, such an objection was not contemporaneous. In the present case, since defendant failed to contemporaneously object *900 at trial to this testimony relating to other crimes, he has now waived his right to assert this error on appeal.
The defendant also complains about the testimony by witnesses that the defendant was involved in purchasing marijuana. Additionally, the defendant complains about the testimony of Officer Robichaux, who told the jury that the defendant's uncle had expressed concern that the defendant was going to kill other family members. However, the record reflects that this testimony was originally elicited by the defense. Because defendant opened the door through interrogation, the defense cannot now complain on appeal. State v. Rideau, 249 La. 1111, 193 So.2d 264, 269 (1966), cert. denied, Rideau v. Louisiana, 389. U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128 (1967); State v. Pratt, 95-762 (La.App. 5 Cir. 2/27/96), 671 So.2d 21, 24.
The defendant also objects to the testimony of the victim's mother regarding threats the defendant made to the victim. The defendant further complains of the testimony of the defendant's uncle, in which he stated that the defendant declared he had shot the victim. Although these complaints are found in an assignment of error dealing with Prieur, the defense counsel does not argue that the testimony comprised improperly admitted other crimes evidence, rather defense counsel argues that this testimony was inadmissible hearsay.
LSA-C.E. arts. 801(A)(1) & 801(C) define hearsay as an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Soler, supra, 636 So.2d at 1078.
Although these statements may be considered hearsay, any error occasioned by this testimony was harmless because the testimony was corroborative. Testimony by Desiree Comardelle regarding threats made by the defendant was properly admitted at trial. Further, testimony regarding the shooting of the victim by the defendant was admitted throughout the trial. Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Pratt, supra, 671 So.2d at 24; State v. Winfrey, supra, 703 So.2d at 78.
The defendant also requests a review of the record for errors patent. We have conducted such a review and found that the trial court failed to inform the defendant of the three year prescriptive period for the filing of an application for post conviction relief. LSA-C.Cr.P. article 930.8. We further note that defendant was not present for the second arraignment in which his plea was changed from not guilty to not guilty by reason of insanity. Defendant's presence at arraignment is required by LSA-C.Cr.P. article 831. However, the record does not show an objection, nor any prejudice suffered by the defendant due to his absence. Accordingly, we find the irregularity in the arraignment was waived by the defendant. LSA-C.Cr.P. article 555; State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 822, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
For the forgoing reasons, we affirm the defendant's conviction and sentence. We remand the matter to the trial court with an order to the court to send written notice of the prescriptive period in LSC.Cr.P. article 930.8 to defendant within ten days of the rendering of this opinion, and to file written proof in the record that defendant received such notice. See; State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.
AFFIRMED WITH ORDER.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973).
[2] The record reflects a written motion for continuance made on other grounds filed on September 15, 1997.