656 So.2d 739 (1995)
STATE of Louisiana
v.
Irving FERRELL.
No. 94-KA-702.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*741 John M. Mamoulides, Dist. Atty., James Maxwell, Caren Morgan, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Linda Davis Short, Staff Appellate Counsel, Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and GRISBAUM, JJ.
GAUDIN, Judge.
Irving Ferrell was convicted of aggravated rape by a jury in the 24th Judicial District Court. On appeal, he assigns eight trial court errors. Our review of the record shows that Ferrell received a fair trial and that there is no reversible error in any of his assigned errors; accordingly, we affirm his conviction and his sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. We do, however, amend the sentence to allow for the possibility of a pardon, which had been specifically denied by the sentencing judge.
Ferrell assigns these errors:
(1) the trial judge erred in granting the state's motion for severance,
(2) there was an incomplete instruction during voir dire regarding a verdict of guilty by reason of insanity,
(3) an excessive number of police officers were allowed in the courtroom during trial,
(4) the trial judge was wrong in allowing the prosecutor to call to the attention of jurors an alleged error in the transcript of his (Ferrell's) statement,
(5) the trial judge erred in denying defense counsel's objection to the prosecuting attorney's questioning of a defense expert medical witness,
(6) the sentence was illegal,
(7) the evidence was insufficient to support a conviction, and
(8) there are errors patent.
Ferrell was convicted of the September 26, 1989 aggravated rape of a mentally retarded woman. According to the victim, she was walking home from a friend's house when Ferrell dragged her into a shed and violently raped her vaginally and anally. The victim had to be hospitalized because of wounds and lacerations inflicted by Ferrell.
Appellant claimed that the victim harassed him to have sex with her and that he injured the victim only when she pulled on his testicles. Ferrell also contended at trial that he was psychotic at the time of the incident and that he was then unable to distinguish between right and wrong.

*742 ASSIGNMENT NO. 1
Ferrell was charged in the same indictment with aggravated rape and attempted murder. Just before trial, the prosecution moved to sever the two offenses. The district judge granted the motion, over defense objection, and the trial proceeded with Ferrell charged only with aggravated rape.
LSA-C.Cr.P. art. 495.1 states, in pertinent part:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses... the court may order separate trials, grant a severance of offenses, or provide other relief justice requires." (Underlining provided.)
Ferrell argues in this assignment of error that it was error for the trial judge to order a severance without a showing of prejudice. The state concedes that the prosecution was not prejudiced by having the two felonies joined in the bill of indictment.
We see no reversible error. Ferrell does not contend that he was prejudiced by the severance or that he was denied any procedural right, although conceivably he could later allege prejudice if he had been found not guilty of aggravated rape and then the state set the attempted murder charge for trial.
In State v. Jones, 396 So.2d 1272 (La.1981), cited and relied on by Ferrell, the court-ordered severance deprived the defendant of his right to a trial by jury. This was error. Ferrell, on the other hand, probably benefitted from the severance in his case; certainly, he was not harmed.
In considering motions to sever, trial judges are vested with sound discretion and their rulings are not disturbed on appeal absent a showing of abuse. See State v. Celestine, 452 So.2d 676 (La.1984); and State v. Cade, 539 So.2d 650 (La.App. 5 Cir.1989), writs denied at 548 So.2d 1245 (La.1989).
In Ferrell's situation, the trial judge did not commit serious error to the defendant's procedural detriment. If there was error in not requiring the state to show prejudice, the error was harmless under the circumstances of this case.

ASSIGNMENT NO. 2
In this assignment of error, Ferrell argues that the trial judge failed to properly instruct on the consequences of the verdict of not guilty by reason of insanity. The state argues that the trial judge correctly instructed the potential jurors regarding the effect of a verdict of not guilty by reason of insanity and that the defense counsel failed to object after this instruction. It further argues that the authorities cited by Ferrell involve the requirement of such an instruction during the closing jury instructions, not when a request is made on voir dire.
During voir dire, a potential juror asked if the sentence was the same for a verdict of guilty and guilty by reason of insanity. The assistant district attorney explained that the sentence, if the defendant was found guilty, was life imprisonment. After a bench discussion, the trial judge explained the consequences and procedure, including periodic reviews of a defendant's condition while in a mental institution. The minutes show that this juror was excused but three members of that panel were chosen as jurors.
The trial judge said that a person found not guilty by reason of insanity is committed to a mental institution for care and treatment. Further, the trial judge stated:
"He (the person hospitalized) cannot be released from that mental institution until it's found that the person no longer presents a threat or danger to himself or others.
"There are periodic reviews of that person's mental condition ... beginning from a period of six months after he's confined, and periodically thereafter.
"He stays in a mental institution until a court determines, based on psychiatric testimony, that he's no longer a danger to himself or others."
Ferrell contends that this explanation was incomplete. It failed to say that he (Ferrell) could only be released after a contradictory hearing with the district attorney and that, if released, he (Ferrell) could be placed on probation subject to conditions imposed by the court. Ferrell's trial lawyer, however, *743 requested a brief explanation and did not find fault with what the trial judge said. There was no objection either before or after the explanation was given.
Codal articles regarding an insanity verdict need not be read in their entirety. They can be paraphrased by the trial judge. See State v. Watkins, 340 So.2d 235 (La. 1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). This is particularly true if and when the defendant agrees to and does not object to what is being said.
The state is accurate in its argument that jurisprudence on this issue involves explanations of the insanity verdict during closing instructions, not on voir dire. This is true in State v. Watkins, supra, and in almost all (if not all) of reported cases. Nonetheless, in the instant case, we see no error. The abbreviated explanation was given with the approval of Ferrell's trial counsel. Appellant cannot now complain.

ASSIGNMENT NO. 3
Ferrell argues that the trial judge erred by permitting the director of courthouse security to place four extra uniformed police officers in the courtroom at one point in the trial. The presence of these officers, Ferrell contends, was so prejudicial that his right to a fair trial was violated.
After the lunch recess on the second day of trial, the trial judge advised counsel, before the jury was brought back into the courtroom, that courtroom security personnel had been told "... that if the alleged victim is brought into the courtroom there is a likelihood that the defendant is going to have some outburst ..."
Consequently, the trial judge permitted four extra officers in the courtroom, bringing the total number of officers in the courtroom to eight, including one who was to testify as a witness. Ferrell had agreed to four uniformed officers, not counting the one who was a witness.
The presence of these officers, Ferrell argues, rendered him guilty before proof of guilt was offered, eroding the presumption of innocence. Further, appellant contends, alternative and less conspicuous measures could have been employed, such as handcuffs and shackles which could have been hidden from the jury's view.
In Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), in which the United States Supreme Court found no unacceptable risk of prejudice in the presence of four uniformed and armed state troopers sitting quietly in the first row of the spectator's section of the courtroom, the Court stated that when a convicted defendant claims denial of a fair trial, because of a courtroom arrangement, a reviewing court's first inquiry should be whether the practice or action complained of was inherently prejudicial. If not inherently prejudicial, the second inquiry should be whether the accused has shown actual prejudice to him.
Here, the record does not show where the four extra officers were seated. There is no indication that they were armed. We cannot say that the presence of these officers was inherently prejudicial. The trial judge remarked that the presence of the extra officers was unobtrusive and that Ferrell was in no way disadvantaged.
Likewise, we cannot say that Ferrell has demonstrated actual prejudice. There is nothing in the record suggesting that the placement or demeanor of the extra officers classified Ferrell as a dangerous person or might have caused a juror to believe that his or her safety was possibly threatened.
A trial judge must exercise reasonable judgment in maintaining courtroom security; in fact, a trial judge has a duty to protect those present in the courtroom. The employment of four extra officers was a sound response to the possibility of a courtroom incident. A less restrictive alternative such as handcuffs and shackles could well have been far more prejudicial to Ferrell's case.
In any event, we hold that the presence of four extra uniformed police officers, seated unobtrusively in the spectator's portion of the courtroom, is not inherently prejudicial. Also, we find from this record that Ferrell *744 has not shown actual prejudice by the presence of the extra officers.

ASSIGNMENT NO. 4
In this assignment of error, Ferrell argues that the trial judge erred in allowing the prosecuting attorney to question a witness about a difference between his (Ferrell's) audio taped statement given to the police and the typed transcription of this statement. He further contends that informing the jury of a change in the transcript highlighted that portion of the testimony and was prejudicial. The state argues that no error was committed, that the tape was available to the defense by means of pretrial discovery and that the tape was played in its entirety for the jury. The state further points out that the trial judge refused to replay only the questioned portion of the statement and ruled that it would not allow the jury to take the transcript into deliberations; therefore, no undue attention was called to the corrected statement and the correction of the transcript did not change the meaning or import of the statement as a whole.
During the trial, Ferrell's taped statement, given the same day of the alleged rape, was played for the jury. Transcripts of this statement were given to the jurors while the statement was played. After the tape was played, the assistant district attorney stated that when hearing the statement on the court equipment, she noticed an error in the transcript. She argued that instead of saying, "I ain't to crime," the defendant stated, "I ain't going to hide to crime." The trial transcript recorded that Ferrell said: "I ain't gonna hide no crime."
This assignment of error is insignificant.

ASSIGNMENT NO. 5
One of the defense witnesses was Dr. Edward Levy, a psychiatrist who testified that Ferrell, at the time of the alleged rape, could not distinguish between right and wrong. Under cross examination, the prosecutor, over defense objection, was permitted to question Dr. Levy regarding generalizations of individuals with psychosis. This was error, Ferrell argues. The only meaningful issue, Ferrell says, was whether he (Ferrell) knew right from wrong, not what others may or may not have known.
The state attorney asked Dr. Levy whether a psychotic individual could distinguish between right and wrong. Dr. Levy said that a person could be psychotic and yet able to tell right from wrong.
This was permissible cross examination. The question was relevant to Ferrell's defense of insanity at the time of the offense.

ASSIGNMENT NO. 6
By means of this assignment of error, Ferrell contends that the trial court erred in imposing a sentence to be served without benefit of pardon. The state concedes that Ferrell's sentence should be corrected. LSA-R.S. 14:42 (aggravated rape) does not provide for the denial of pardon. Accordingly, we order Ferrell's sentence to be corrected by the elimination of the word "pardon."

ASSIGNMENT NO. 7
Here, Ferrell argues that the evidence used to convict him was not sufficient. Our careful review of the testimony and evidence, however, indicates that the jury could have found (1) that Ferrell was legally sane when the rape was committed and (2) that the victim did not encourage Ferrell or consent to any sexual activity.
The state bears the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute a defendant's guilt. La.R.S. 15:271; also, State v. Pravata, 522 So.2d 606, 613 (La.App. 1st Cir.), writs denied at 531 So.2d 261 (La. 1988). In Louisiana, however, a defendant is presumed sane at the time of the offense; the state is not required to prove sanity. See La.R.S. 15:432; also, State v. Weber, 364 So.2d 952 (La.1978); and State v. Jackson, 548 So.2d 29 (La.App. 5 Cir.1989).
The question of whether or not a defendant affirmatively proved his insanity and should not be held responsible for his actions is one for the jury. All of the evidence, including both expert and lay testimony, and the conduct and action of the defendant, should be considered by the jury in determining sanity. See State v. Pravata, 522 So.2d at 614. When a defendant who *745 affirmatively offered the defense of insanity claims that the record evidence does not support a finding of guilty beyond a reasonable doubt, the standard for review by an appellate court is whether or not any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. See State v. Claibon, 395 So.2d 770, 772 (La.1981).
The reviewing court properly looks to the expert and lay testimony, to the defendant's actions and to circumstances of the charged crime. See State v. Jackson, supra, and State v. Claibon, supra.
Three expert forensic psychiatrists testified at trial, Dr. Levy and Dr. Richard Richoux for the defense and Dr. Robert Davis for the prosecution. Dr. Levy and Dr. Richoux each said that Ferrell had borderline intelligence or was mildly retarded and that he was psychotic, unable to distinguish between what was right and what was wrong when the rape occurred.
Dr. Davis said that while Ferrell was a psychopath and exhibited no remorse for his actions, he did know right from wrong when the crime happened.
Both Dr. Levy and Dr. Richoux, under cross examination, made admissions that hurt Ferrell's insanity defense. Dr. Levy said that he had not interviewed either Ferrell's father or mother, and that he knew Ferrell had a violent background and that it was possible for a psychotic to be able to know right from wrong.
In Ferrell's statement to the police just after the occurrence, he said: "And then she talk about she wanted to go to the shed and I kept telling her no." Could not such words, Dr. Levy was asked, be an indication that he (Ferrell) had a conscious knowledge of right from wrong? Dr. Levy replied:
"The answer to that is that it might indicate that he personally knew the difference between right and wrong."
In this statement, Ferrell had a clear recollection of what he had done and he repeatedly expressed remorse. Dr. Levy said that remorse is knowing right from wrong.
Dr. Richoux, like Dr. Levy, said that psychotics (and schizophrenics) can "... know right from wrong at various points in time."
We have carefully considered the testimony of Drs. Levy and Richoux, along with Dr. Davis', and it is apparent from this testimony and from other evidence that the jury could reasonably have found that Ferrell was sane and that he knew right from wrong at the time of the rape. By so doing, the jurors accepted as valid and true the opinions of Dr. Davis and the testimony of other state witnesses, particularly the victim.

ASSIGNMENT NO. 8
We found three errors patent, the first of which was discussed under the sixth assignment of error.
Also, the record shows that Ferrell did not expressly state that he was waiving the 24-hour delay period required by LSA-C.Cr.P. art. 873. However, when the trial court asked if Ferrell was ready for sentencing, defense counsel affirmatively answered, "Ready for sentencing, Your Honor." This was an implied waiver of the delay. See State v. Starks, 549 So.2d 409 (La.App. 5 Cir.1989).
The third patent error is that the sentencing judge failed to inform Ferrell of the prescriptive period for post-conviction relief mandated by LSA-C.Cr.P. art. 930.8. We therefore remand to the trial judge and order him to inform the defendant of the provisions of this article by sending appropriate written notice to him within ten days of the rendition of this opinion and to file in the record written proof that the defendant received this notice.
SENTENCE AMENDED, REMANDED WITH INSTRUCTIONS, OTHERWISE AFFIRMED.