777 So.2d 541 (2000)
STATE of Louisiana
v.
David LAPELL.
No. 00-KA-1056.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 2000.
*542 Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Appellant, David Lapell.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, Attorney for Appellee, State of Louisiana.
Panel composed of GOTHARD and CANNELLA, JJ., and H. CHARLES GAUDIN, Pro Tempore.
CANNELLA, Judge.
Defendant, David Lapell, appeals from his conviction of first degree robbery and his sentence as a second felony offender to 30 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
On June 22 1995, Debbie Smith (Smith) was driving a cab for Westbank Cab. At approximately 7:30 a.m., Smith was parked in the parking lot of the K & B Drug Store located at 4500 Westbank Expressway near West Jefferson Hospital. The Defendant rode up to her cab on a bike and asked Smith how much the fare would be to go to Charity Hospital. Smith told the Defendant that it would be approximately $16 and he told Smith that he would be back. The Defendant left and, when he came back, he again spoke to Smith. The Defendant again rode off on the bike. The Defendant came back again, threw his bike down, and jumped into the back of Smith's cab.
When the Defendant got into the cab, he told Smith that he was going to ride for free and told Smith that he had a gun. When the Defendant told Smith that he *543 had a gun, he reached into his waistband. The Defendant told Smith to hand over her money. Smith handed the Defendant $20 from her top shirt pocket. The Defendant then told Smith to drive to Estalote Street where they picked up a second passenger. The defendant told Smith to drive to Pailet Street. Smith stated that the Defendant appeared to be looking for someone. When the person was not there, the Defendant instructed Smith to drive to the Scottsdale area.
The Defendant and the other man then exited the cab and fled. Smith left the area and called her dispatcher to report the robbery. Smith gave a description of the Defendant and the clothes that he was wearing. Smith then parked her cab in a lighted area so she could calm down.
On that same date, Randy Landry (Landry) was also driving a cab for Westbank Cab. Landry heard the call which Smith made to the dispatcher to report the robbery. Landry heard the description of the robbers and headed to the area where the robbers had gotten out of Smith's cab.
As Landry arrived in the area he saw a Jefferson Parish Deputy and flagged him down and reported the robbery. The deputy then drove off and Landry continued to drive in the area. While Landry was driving, he saw the Defendant. Landry stopped when he saw the Defendant and backed up his cab. When the Defendant saw Landry, he began to run. The Defendant ran to a building and Landry gave chase in his cab. Landry watched as the Defendant knocked on a door in the building and entered. Landry then called his dispatcher to tell the police where the Defendant was. The police arrived and Landry pointed out the door that the Defendant had entered. The police entered the building and arrested the Defendant.
Deputy Donald Tusa of the Jefferson Parish Sheriffs Office was on duty on June 22, 1995. Deputy Tusa was informed by another deputy of the robbery of Smith. He was also informed that Landry had located the robbers. Deputy Tusa went to the apartment complex to help apprehend the robbers. He and another deputy entered the apartment that they were told the robbers had entered. Inside, the deputies found the Defendant and the other man. The deputies had to physically subdue the Defendant.
Deputy Allen Joanas was also on duty that night. He heard on the radio that Landry had flagged down Sergeant Jim Ducote and told him of the robbery of Smith. Deputy Joanas met with Smith. Deputy Joanas accompanied Smith to the area where the Defendant was arrested and Smith identified the Defendant as one of the robbers. Deputy Joanas proceeded to the area where Smith picked up the Defendant and retrieved the bike that Defendant had been riding.
On August 7, 1995, the Jefferson Parish District Attorney filed a bill of information charging the Defendant and Tafia Griffith (Griffith) with first degree robbery (La. R.S. 14:64.1).[1] On August 11, 1995, the Defendant pled not guilty at his arraignment.
On August 31, 1995, the Defendant filed a motion to suppress confessions, identification and evidence, a motion for discovery and inspection, and a motion for speedy trial.[2]
On November 28 through 29, 1995, trial was held before a twelve person jury. At trial, the Defendant presented a different *544 version of the events that transpired on the night of June 22, 1995.
The Defendant testified at trial after being informed by the trial judge, outside of the presence of the jury, of his right to remain silent. At the beginning of his testimony, the Defendant admitted that he had been previously convicted of burglary twice, that he had been convicted of misdemeanor theft of under $100, and that he had been convicted of misdemeanor possession of drug paraphernalia.
The Defendant then testified that on the night of June 22, 1995, he was riding his bike in the 4500 block of the Westbank Expressway. As he rode near Smith, who was sitting in her parked cab, she stopped him. She asked him if he knew where she could buy some crack cocaine. He told her that he might and he got into her cab. The Defendant denied threatening Smith when he got into the cab. They drove to Estalote Street and saw Tefee Griffin (Griffin).[3] They stopped and asked Griffin if he knew where they could get drugs in the Scottsdale area. Griffin got in the car and they drove to Scottsdale.
When they arrived in the Scottsdale area, Griffin pointed out an apartment. Smith gave the Defendant $20 to buy crack cocaine. The Defendant and Griffin got out of the cab and went into the apartment leaving Smith in her cab. Inside the apartment, the two men purchased crack cocaine. Griffin convinced the Defendant to smoke the crack cocaine which they had just bought with Smith's money and not bring her any of it. The Defendant and Griffin went outside to smoke the crack cocaine and then went back into the apartment. The Defendant was in the apartment when the deputies entered and arrested him and Griffin.
The jury apparently believed the State's version of the events and not the Defendant's, because they found the Defendant guilty as charged.
In open court on December 7, 1995 the Defendant filed motions for post verdict judgment of acquittal and new trial, which were both denied. The Defendant waived sentencing delays and the trial court sentenced him to 15 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. During the same hearing, the State filed a habitual offender bill of information alleging that the Defendant was a second felony offender. The Defendant denied the allegations in the habitual offender bill of information. On February 1, 1996, the trial court took up the habitual offender hearing and heard expert fingerprint testimony. The trial court continued the hearing until March 7, 1996. On March 7, 1996, the trial court concluded the hearing and found the Defendant to be a second felony offender, vacated his prior 15 year sentence, and sentenced him to 30 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. It is from this conviction and enhanced sentence that the Defendant now appeals.[4]
On appeal, in two briefs, one filed by the Defendant's appellate counsel and the other filed by the Defendant himself, seven assignments of error are argued.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defense counsel argues that the evidence was insufficient to support the verdict of guilty of first degree robbery. The State argues *545 to the contrary that the evidence presented was sufficient to support the Defendant's conviction.
The standard for appellate review of the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La. 1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099. Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.
The Defendant was convicted of first degree robbery (La. R.S. 14:64.1) which provides in part that:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
At trial, the State presented the testimony of the victim, Smith, which established the elements of the crime. She testified that the Defendant got into the back of her cab and told her that he had a gun. When telling Smith that he had a gun, the Defendant reached for his waistband. The Defendant ordered Smith to drive him around and to turn over any money which she had to him. Smith gave him the $20 she kept in her top shirt pocket. Smith stated that the Defendant fled the cab when they got to the Scottsdale area. After the Defendant was arrested, Smith positively identified him as the robber.
The Defendant testified that he did not rob Smith, but instead, Smith asked him if he knew where she could buy drugs. The Defendant claims that Smith drove him around in an attempt to find drugs. He testified that Smith gave him $20 to buy drugs and that he did purchase crack cocaine with the money. The Defendant further testified that he decided not to give any of the crack he bought to Smith and used it all himself. Defendant stated that he was at the apartment where he bought the drugs when he was arrested.
On appeal, the Defendant argues that the facts support his version of events whereby he admitted the theft of Smith's money by fraud and not Smith's version whereby he robbed Smith. However, this argument ignores that Smith's testimony was corroborated in part by the testimony of Landry, who stated that he spotted someone matching the Defendant's description in the Scottsdale area and that the person ran to an apartment, knocked on the door and then ran inside. Landry notified the police who found the Defendant inside of the apartment pointed out by Landry. It is clear that the jury accepted the State's version of events because they found the Defendant guilty as charged of first degree robbery.
The Defendant's argument asks this court to reweigh the evidence and the alleged inconsistencies in Smith's testimony. However, this Court has held that it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Hopson, 98-943 (La.App. 5th Cir.3/30/99), 735 So.2d 81, 85, writ denied, 99-1315 (La.11/12/99), 749 So.2d 650; State v. Styles, 96-897 (La.App. *546 5th Cir.3/25/97), 692 So.2d 1222, 1233, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
Based on the testimony of Smith that the Defendant told her that he had a gun, reached for his waistband, and took $20 from her, we find that the State presented sufficient evidence to support the Defendant's conviction and that the jury reasonably rejected the Defendant's version of events. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error defense counsel argues that the trial judge abused his discretion in failing to grant an evidentiary hearing to determine if the extra security in the courtroom was required or whether it was an attempt by the State to influence the verdict by making the Defendant appear "dangerous".
The State responds that there is no requirement that the trial court hold an evidentiary hearing on the issue of extra security and that the Defendant has failed to demonstrate any prejudice because of the presence of extra security.
Prior to opening statements and out of the hearing of the jury, the following discussion took place:
MR. BIRI (defense counsel):
For the record, Lawrence Biri representing the defendant. I understand that there has been some kind of communication or something has come to light with the police department. There's several police officers in court for extra security and of course I want an evidentiary hearing to show the necessity for such security for such a number of police officers. I'm not going to turn around and count them, but I know there must be anywhere between six to ten police officers.
THE COURT:
Turn around and count them.
MR. BIRI:
Okay, there's six.
THE COURT:
The reason those police officers are here is because of the security. The sergeant in charge of security in this building was advised that your client told the jail personnel that he intended to cause a demonstration in front of this jury and that he intended to have some of his family members come to court to assist him in that demonstration. They felt that the addition of the deputies was necessary to protect the jury and the court personnel and the people in the courtroom. And I'm not going to even think about interfering with that decision. The officers are not being intrusive there, they are in different places in the courtroom and only one deputy is in front near the presence of your client. And there is no way that this jury has any way of knowing the normal number of police officers that are in the courtroom during the trial.
The motion is denied.
Defense counsel argues that the trial court abused his discretion in not holding an evidentiary hearing to determine if the extra security was necessary. Defense counsel suggests that a hearing like that held in State v. Hernandez, 98-448 (La. App. 5th Cir.5/19/99), 735 So.2d 888, writ denied 99-1688 (La.11/12/99), 750 So.2d 194, should have been conducted herein.
Hernandez is distinguishable, however, because it involved a case where the Defendant was shackled to the table throughout the trial. Further, in relying on Hernandez, defendant ignores this Courts opinion in State v. Ferrell, 94-702 (La.App. 5th Cir.5/30/95), 656 So.2d 739, writ denied, 95-2360 (La.4/18/97), 692 So.2d 433, which is more closely related.
In Ferrell, the defendant argued that the trial court erred by permitting the director of courthouse security to place four extra uniformed police officers in the courtroom at one point in the trial. The defendant in Ferrell argued that the presence *547 of the officers rendered him guilty before proof of guilt was offered and that less conspicuous measures could have been employed such as handcuffs and shackles which could have been hidden from the jury's view. State v. Ferrell, 656 So.2d at 743.
In finding that the presence of the extra officers was not inherently prejudicial, this Court followed the principles set out by the U.S. Supreme Court's opinion in Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), in which the United States Supreme Court found no unacceptable risk of prejudice in the presence of four uniformed and armed state troopers sitting quietly in the first row of the spectator's section of the courtroom. The Court in Holbrook stated that when a convicted defendant claims denial of a fair trial, because of a courtroom arrangement, a reviewing court's first inquiry should be whether the practice or action complained of was inherently prejudicial. If not inherently prejudicial, the second inquiry should be whether the accused has shown actual prejudice to him.
This Court also found, in Ferrell, that a trial judge must exercise reasonable judgment in maintaining courtroom security; in fact, a trial judge has a duty to protect those present in the courtroom. State v. Ferrell, 656 So.2d at 743. We noted that the employment of four extra officers was a sound response to the possibility of a courtroom incident and that a less restrictive alternative such as handcuffs and shackles could well have been far more prejudicial to the defendant's case. Id.
Similarly, in this case, there was no showing that the extra security was inherently prejudicial. The trial court noted that the extra officers were in different places in the courtroom and were not being intrusive. The trial court further noted that the jury had no way of knowing the normal number of police officers. There was only one additional officer to that in the Ferrell case. Further, there was no showing of actual prejudice to the defendant in this case. While defense counsel points to three instances indicated by the jury sheets where the jurors may have changed their vote, there is no showing that the votes were changed due to the presence of extra security in the court room. Rather, like Ferrell, we find that the presence of the extra security in the court room was the exercise of reasonable judgment by the trial judge in maintaining courtroom security upon the advice of a threat of a courtroom disturbance.
It is noted that defense counsel supplemented her brief with the case of Elledge v. Dugger, 823 F.2d 1439 (11th Cir.), opinion withdrawn in part, 833 F.2d 250 (11th Cir.1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988),[5] from the United States Eleventh Circuit Court of Appeal. The Elledge case involved a defendant who was shackled during the sentencing phase of his trial. Elledge v. Dugger, 823 F.2d at 1450. The court noted that the trial court refused to give him an opportunity to refute the reasons for the shackles. Elledge v. Dugger, 823 F.2d at 1451. The court cited several federal shackling decisions and found that the defendant should have been given the right to contest the shackling. Elledge v. Dugger, 823 F.2d. at 1451-1452.
We find Elledge distinguishable from the instant case. Elledge, like Hernandez, dealt with shackling, a practice clearly visible to the jury with the obvious implications. In the case of extra security in the courtroom, as pointed out by the trial judge in this case, the reason for the security or the fact that it is not the usual practice is not readily evident to the jury.
We find that this Court's opinion in Ferrell is on point with the instant case and supports the finding that this assignment of error does not present reversible error. This assignment of error lacks merit.

*548 ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR[6]
By these assignments of error defense counsel argues that the Defendant's sentence is excessive and that he was denied effective assistance of counsel because counsel did not file a motion to reconsider sentence to preserve this issue for appellate review. More particularly, defense counsel argues that the sentence is excessive because the conviction used as a basis for enhancement had already been considered by the trial judge in assessing sentence and the trial judge articulated no additional reasons justifying the upward departure from the original sentence.
The State responds that the sentence imposed is not constitutionally excessive and that the Defendant's trial counsel was not ineffective. The State points out that in order for the Defendant to succeed in his claim of ineffective assistance of counsel, the Defendant must show, among other factors, a reasonable probability that but for the error, Defendant's sentence would have been different. The State argues that the Defendant cannot make this showing because in fact, the sentence imposed is not excessive.
Both the United States and Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, art. I, § 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38; State v. Daigle, 96-782 (La.App. 5th Cir.1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
In the present case, the Defendant was found guilty of first degree robbery (La. R.S. 14:64.1) which provides in part that:
Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.
The Defendant was also found to be a second felony offender under La. R.S. 15:529.1 which provides in part that:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
Based on these provisions, the sentencing range in this case was 20 years to 80 years without benefit of parole, probation, or suspension of sentence. The trial court sentenced the Defendant to 30 years without benefit of parole, probation, or suspension of sentence, closer to the lower end of the range than even to the middle.
It is noted that this court in State v. Riley, 581 So.2d 1077 (La.App. 5th Cir. 1991), found that a sentence of 25 years at hard labor for a second felony offender convicted of first degree robbery was not excessive and not an abuse of the trial court's discretion. State v. Riley, 581 So.2d at 1079. Further, in Riley, the Defendant only had one prior felony conviction, unlike the range of offenses of this Defendant.
In this case, the Defendant admitted to two prior felonies and two misdemeanors, one of which was a drug related offense. The trial court noted these prior convictions *549 and noted that the Defendant was presently engaged in using drugs. Further, the Defendant perpetrated his crime by preying on a vulnerable cab driver. Based on the facts of the case and the Defendant's prior criminal record, we find that the sentence imposed was not constitutionally excessive. Thus, the Defendant has suffered no prejudice from his counsel's failure to file a motion to reconsider sentence.
The Defendant also argues that the trial court impermissibly relied on his prior convictions in setting his original sentence and again relied on the Defendant's prior criminal convictions to enhance Defendant's sentence in the habitual offender hearing. The Defendant claims that La. C.Cr.P. art. 894.1B(12) prohibits the use of a defendant's criminal past as an aggravating factor and then again to enhance his sentence.
La.C.Cr.P. art. 894.1, relied on by defendant in support of his argument, provides in pertinent part:
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
* * *
(12) The offender was persistently involved in similar offenses not already considered as criminal history or as a part of a multiple offender adjudication.
A careful reading of the above provision makes it clear that it does not contain the prohibition claimed by the defendant. Rather, it only provides one ground for the trial court to consider in deciding whether to suspend a sentence. It does not prevent the trial court from using a prior conviction, considered as part of the Defendant's criminal history in imposing the original sentence, as the predicate offense to support the enhancement of his sentence as a habitual offender. Further, the same prior conviction has not been used twice to the Defendant's disadvantage. The Defendant's original sentence in this case has been vacated and the Defendant has only received one sentence effected by his prior criminal record. These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error, defense counsel requests that this court review the record for any errors patent.
The record was reviewed for errors patent according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
This Court, in its earlier opinion, State v. Lapell, 96-KA-463 (La.App. 5th Cir.11/14/96), 684 So.2d 91, noted that the trial court failed to inform the Defendant of the prescriptive period for post conviction relief in accordance with La.C.Cr.P. art. 930.8. This court remanded the case to the trial court with an order that the trial court so inform the Defendant and have evidence of receipt of this notification placed in the record. Both defense counsel and the State agree that the record fails to show that the trial court complied with this order. Therefore, the case will again be remanded to the trial court with instructions to the trial court to send written notice of the time for filing a post conviction application to the Defendant within ten days of the rendering of this opinion and to file written proof in the record that the Defendant received the notice. State v. Stelly, 98-578, (La.App. 5th Cir.12/16/98), 725 So.2d 562.

ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN
By these assignments of error the Defendant argues that he was erroneously adjudicated a second felony offender because the guilty plea conviction used to enhance his sentence as a second felony offender was unconstitutionally obtained. He also argues that his counsel during *550 these proceedings was ineffective for failing to file a written response to the habitual offender bill of information and for failing to investigate and find that the prior guilty plea was unconstitutionally obtained. More specifically, the Defendant argues that the minute entry, transcript and waiver of rights form introduced as proof of the predicate offense did not establish that the Defendant was advised of the elements of the offense or the mandatory minimum sentence that could be imposed prior to entering his plea. Therefore, the Defendant argues that this guilty plea conviction should not have been used to support the trial court's finding that he is a second felony offender and his counsel was ineffective for not objecting to the use of the conviction on these grounds. We disagree.
A review of the record indicates that the Defendant was adequately advised of his Boykin[7] rights as well as other rights prior to the entry of his plea to the offense of attempted simple burglary of an inhabited dwelling. Both his attorney and the trial judge went over the rights with the Defendant in his waiver of rights form. Further, the transcript of the guilty plea proceedings indicates that the trial judge went over these rights with him again during the proceedings. The record also indicates that the Defendant understood the elements of the offense with which he was charged. When asked by the trial court if he knew what he did wrong, the Defendant responded that he broke into a house. Further, the record makes it clear that the Defendant pled guilty as part of a plea bargain where he was promised and was given a suspended sentence in return for his guilty plea. There is nothing in this record that indicates that the Defendant's plea was not knowing and voluntary, in other words, constitutional. And the Court notes that the Defendant does not herein argue that his plea was not knowingly and voluntarily entered. Therefore, we also find nothing prejudicial about defense counsel's failure to object the use of the conviction, because we find that there was no basis for objection. These assignments of error lack merit.
Accordingly, for the reasons set forth above, we affirm the Defendant's conviction for the offense of first degree robbery and his enhanced sentence as a second offender to 30 years imprisonment at hard labor, without benefit of parole, probation of suspension of sentence, with credit for time served. The case is remanded to the trial court to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] The bill of information was dismissed as to Griffith on March 25, 1996.
[2] It is noted that no ruling appears in the record on Defendant's motion to suppress. However, it has been held that all pending motions are deemed waived by permitting trial to proceed without raising the issue that said motions were not heard nor ruled upon. State v. Post, 98-869 (La.App. 5th Cir.2/10/99), 729 So.2d 38. This has not been assigned as error and we do not consider it error.
[3] It is noted that the transcript identifies the second passenger as "Tefee Griffin," but the bill of information spells the second passenger's name as "Tafia Griffith."
[4] Defendant filed a previous appeal in this court numbered 96 KA 463. In that case defense counsel filed an Anders brief and motion to withdraw. This Court affirmed defendant's conviction and granted defense counsel's motion to withdraw in a ruling dated November 14, 1996. However, following post-conviction applications, and a remand order from the Louisiana Supreme Court, the trial court granted defendant an out-of-time appeal on October 22, 1999, which forms the basis of this appeal.
[5] The Eleventh Circuit withdrew Part III of it's opinion dealing with consideration of non-statutory mitigating factors. Elledge v. Dugger, 833 F.2d at 250.
[6] It is noted that the Defendant combined his arguments under assignments of error number three and number four. In the interest of clarity, we will also combine the discussion of these two assignments.
[7] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).