830 So.2d 1003 (2002)
STATE of Louisiana
v.
Bruce BREAUX.
No. 02-KA-382.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
Rehearing Denied December 9, 2002.
*1005 Holli Herrle-Castillo, Marrero, LA, for Appellant, Bruce Breaux.
John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Appellee, State of Louisiana.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Bruce Breaux, Sr., appeals from his convictions of indecent behavior with a juvenile, a violation of La. R.S. 14:81, of molestation of a juvenile, a violation of La.R.S. 14:81.2, and from his concurrent sentences of three and one-half years imprisonment at hard labor on each conviction. We affirm.
On December 22, 2000, the Defendant was charged by bill of information with one count of molestation of a juvenile identified as B.W. and one count of molestation of a juvenile identified as R.W. The bill of information was amended on May 21, 2001 to add 2 more counts of molestation of a juvenile identified as R.W. and B.W. Following a second preliminary examination, the first two counts were dismissed for lack of probable cause.[1] The remaining two counts were tried on August 21 and 22, 2001.
Following the jury trial, the Defendant was found guilty of the lesser and included offense of indecent behavior with the juvenile B.W. and guilty of molestation of the juvenile R.W. On October 25, 2001, the Defendant filed a motion for new trial and a motion for a post verdict judgment of acquittal. The trial judge denied both motions. The Defendant waived sentencing delays and the trial judge sentenced the Defendant to serve three and one-half years of imprisonment at hard labor on each count, to be served concurrently. On April 3, 2002, the trial judge heard and denied the Defendant's motion for reconsideration of sentence. The Defendant's motion for appeal was subsequently granted.
Rhonda Williams (Rhonda) testified that she is the mother of R.W. and B.W. On the evening of November 7, 2000, her sister, Rejeanne Williams, telephoned and asked her to bring home her one year old daughter, Brejeanne Anderson. Because Rhonda did not have a vehicle, she called her aunt, Lois Fisher (Fisher), to ask if she would take her to Garyville to her sister's house.[2] When Fisher arrived, the Defendant, who was 40 years old at the time, was sitting in the front passenger seat of the car. The Defendant was her cousin, but she had not seen him in nine years. The Defendant moved to the back seat and let Rhonda sit in the front because she was pregnant. During the ride there and back home, the radio was on and music was playing at a normal level. When they arrived at her sister's house in Garyville, she was waiting on the porch. Rhonda exited the vehicle and handed her baby *1006 niece to her sister and talked to her for approximately five minutes.
Rhonda testified that, when they arrived back home, R.W. and B.W. appeared upset. She noticed the girls crying as they walked up to the porch. After her aunt and the Defendant left, her daughters told her that the Defendant had touched their vaginas. Rhonda called her aunt and told her what had happened. Fisher informed her that she dropped the Defendant off at a friend's house.
Rhonda called the police that night and a police officer took statements from the children. Although the officer told her to take the girls to Children's Hospital, she had no way of getting to the hospital that night. She testified that she brought the girls to River Parishes Hospital the next day. In reference to a statement one of the children made during the investigation, Rhonda testified that she did not know if any of the children had been sleeping in the back of the car and did not recall testifying on April 4, 2001 in the first preliminary examination that R.W. had told her that she had been asleep with her head on B.W.'s lap. She also did not remember R.W. telling the triage nurse that she was asleep in B.W.'s lap, or that B.W. stated to the nurse, "When I opened my eyes he was still, he was still doing it." Rhonda stated that R.W. was wearing shorts and a shirt when she was in the car. She also testified that B.W. told her that she saw the Defendant touching R.W. on the buttocks and rubbing her thigh. Rhonda stated that she could not recall whether she kept the girls home from school the next two days.
At the time of the offenses, B.W. was six years old. She was seven years old when she testified at trial and stated that she knew the difference between a lie and the truth. According to B.W., on November 7, 2000, she was riding in the back of her aunt's, Fisher's, car with her younger sister, R.W., her brother, a one-year old cousin, and the Defendant. Her aunt was driving and her mother was riding in the front passenger seat. B.W. testified that she was sitting next to the driver-side door and R.W. was sitting next to her. The Defendant was sitting next to R.W. and behind her mother, and her brother was sitting against the back passenger door. B.W. stated that it was nighttime and they were going to her aunt's house in Garyville to drop off her baby cousin. B.W. testified that on the way back to her house, the Defendant put his hand up her pants and touched and rubbed her "private parts." She explained that she was wearing a pair of stretch shorts. At first she said that the Defendant did not touch her buttocks. However, she later admitted that the Defendant touched her buttocks "a little bit." B.W. said that she tried to call to her mother for help, but the Defendant put his hand over her mouth. Although she tried, she could not move his hand away from her because he was too strong.
B.W. testified that when they arrived back home, she ran inside, but her mother stayed outside talking to her aunt. R.W. asked her, "What's wrong Bria?" She replied, "Bruce touched me." B.W. testified that R.W. told her that the same thing had happened to her, and both began crying. When her mother came inside, she and R.W. told her that the Defendant had touched them. According to B.W., her mother called the police that night, and she was taken to a hospital where she told a doctor what had happened.
B.W. stated that she did not see anything happen to R.W. because she was looking out the window after the Defendant stopped touching her. According to B.W., she remembered going to school the next day. She also stated that she and her sister had talked to the nurse at the hospital *1007 separately. B.W. stated that no one was sleeping in the car.
R.W. was five years old when the offense occurred. She testified at trial that she was six-years old and in the first grade. The trial judge asked her several questions regarding whether she knew the difference between the truth and a lie. R.W. established to the court's satisfaction that she did know the difference. R.W. identified the Defendant in court and stated that she remembered riding in the back of her aunt's car with him. She stated that B.W., herself, her cousin, her brother, and the Defendant were sitting in the back seat, and that her aunt and mother were seated in the front seat. According to R.W., the radio in the car was not playing.
R.W. testified that, during the ride, the Defendant touched her buttocks and her "private part," and that the Defendant went inside her "private part." R.W. stated that she was standing in between the front seat and the back seat when the Defendant put his hand under her nightgown, went through her panties, and touched her. She tried to stop him and tried to tell her mother. However, the Defendant put his hand over her mouth. When she arrived home, she went into her room and began crying. When her mother came into her room, R.W. told her what had happened. R.W. further testified that she saw the Defendant touch B.W., and said that he leaned across her to touch her older sister. R.W. stated that B.W. tried to hit the Defendant when she saw the Defendant touching her. R.W. did not remember going to the hospital and talking to a doctor, but remembered staying home from school for two days following the incident.
Tal Oubre of the St. John Sheriff's Office (SJSO) testified that, on November 7, 2000, he was dispatched to a call regarding child molestation. He arrived at 359 Captain Bourgeois Street in LaPlace around 8:35 p.m. Officer Oubre testified that he spoke to Ms. Williams and learned that a cousin named Bruce Breaux had molested her two daughters while in a vehicle. Officer Oubre stated that he interviewed the children separately and outside the presence of the mother at the residence. He testified that the children's statements were consistent. After speaking with the children, Officer Oubre contacted Juvenile Detective Paul Oubre, the criminal investigator for the juvenile division of SJSO, who advised him to tell the mother to take the children to a hospital and then meet him at his office the next morning at 9:00 a.m. Detective Oubre stated that one of the girls informed him that the defendant had actually penetrated her vagina.
Detective Oubre, testified that Officer Oubre contacted him regarding two girls being sexually assaulted on November 7, 2000. Detective Oubre advised Officer Oubre to tell the mother to bring the children to a hospital and then to meet him the next morning. He testified that Rhonda Williams met alone with him the next day at around 9:00 a.m., explaining that the children had been up all night with the examination. Detective Oubre interviewed the girls on November 13, 2000 and recorded a statement from them. Detective Oubre stated that Ms. Williams told him that she had taken the girls to the hospital before coming to see him on the morning of November 8, 2000. He also stated that B.W. did not tell him that she tried to slap the Defendant when he was touching her sister.
Dr. Richard Roberts, the emergency department physician at River Parishes Hospital, testified as an expert in emergency room medicine. Dr. Roberts stated that he treated both R.W. and B.W. on November 8, 2000, around 6:15 p.m., the day after the incident. He testified that he found no *1008 physical evidence of molestation on either child, but explained that it was usual to find no physical evidence in a case of touching.
Fisher testified that, on November 7, 2000, she brought the Defendant, Rhonda, three little girls, and a boy to Garyville. She stated that Rhonda held the one-year-old baby and that the baby was not in the back seat. Fisher also stated that after taking Rhonda and the three children home, she took the Defendant to Harding Mitchell's house. She explained that it was Election Day and the Defendant needed a ride to go vote.
Barbara Falgoust, the supervisor of Child Welfare and Attendance for the St. John the Baptist School Board, testified that both B.W. and R.W. attended school on the three days following the incident, November 8, 9, and 10, 2000.
Jeannie Bourgeois (Bourgeois), a registered nurse at River Parishes Hospital, interviewed R.W. and B.W. in the triage room. She testified that both girls and the mother were present at the same time during the interview. Bourgeois stated that R.W. told her that her head was lying in the Defendant's lap asleep when the event occurred. Bourgeois noted on her report that R.W. stated to her, "When I opened my eyes, he was still doing it."
Stephanie Blayre, a social worker at River Parishes Hospital, testified that she interviewed R.W., B.W., and their mother in the room at the same time.
Hoyt Parquet (Parquet) testified that he knew the Defendant since high school, and that on November 7, 2000, someone in a white car let the Defendant out of the car near his home. According to Parquet, the Defendant was carrying cake on a plate and he offered some to him. Parquet took the Defendant to the polls to vote and then gave him a ride home.
Susan Vigen (Vigen) an expert in the field of psychology with a focus on evaluation and treatment of children including sexually abused children, testified that she did not interview any of the parties. However, she stated that the children should have been interviewed separately, because children may pick up details from each other and produce similar stories. Vigen explained that there are dangers when children are interviewed with parents present because they usually want to please their parents. In addition, Vigen stated that molestation usually occurs in isolation from other people. She said that it is a gradual process, with the molester attempting to gain the trust of the juvenile through gifts and subtle bribes. Vigen further stated that she had never had a case where a child was molested by an adult in front of other children or with other adults in the same room.
The Defendant testified that he was seated in the back seat of Fisher's car, next to the passenger side door behind Mrs. Williams, on the way to and from Garyville. According to the Defendant, Rhonda's son was seated to his left, and the son was holding the baby, not Rhonda. Contrary to Rhonda's testimony, the Defendant asserted that he was the only one who exited the car in Garyville. He claimed that he handed the baby to Rhonda's sister. The Defendant denied touching any of the children in the car.
According to the Defendant, when they arrived back at Rhonda's home, everyone but Fisher went inside the house. He explained that Rhonda offered to give him some cake. The Defendant stated that when they entered the home, none of the children were crying. B.W. went into the kitchen with Rhonda and the Defendant, where Rhonda cut him two pieces of cake, placed the cake on a paper plate and wrapped it in aluminum foil. The Defendant *1009 then left the home. Fisher then drove him to a spot near Parquet's home and Parquet gave him a ride to the polls to vote.
On appeal, the Defendant asserts that the prosecutor made impermissible comments during closing argument, that the State failed to provide sufficient evidence to support the convictions, and that the sentence is excessive. Also, he requests a patent error review, pursuant to La. C.Cr.P. art. 920.
SUFFICIENCY OF THE EVIDENCE
The Defendant contends that the evidence was insufficient to support the jury verdict because of the discrepancies and conflicting stories of the juveniles. He argues that the conflicting details of the children's testimony did not support the convictions. However, it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Sampson, 95-58 (La.App. 5th Cir.5/30/95), 656 So.2d 1085, 1088; writ denied, 95-1665 (La.11/27/95), 663 So.2d 730. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction or convictions. State of Louisiana in the Interest of L.A., 95-409 (La.App. 5th Cir.12/13/95), 666 So.2d 1142, 1144. Thus, we will address the sufficiency of the evidence as a whole.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5th Cir.12/13/00), 777 So.2d 541, 545. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
With regard to count three, molestation of a juvenile against B.W., the jury found the Defendant guilty of the lesser and included offense of indecent behavior with a juvenile. The crime of indecent behavior with a juvenile is defined by La. R.S. 14:81 as follows:
A. Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
To convict a defendant of this offense, the State must prove that (1) there was an age difference of greater than two years between the accused and the victim, who was not yet seventeen, (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child, and (3) that the accused intended to arouse or gratify either his own or the victim's sexual desires. State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784, 787. Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Harris, 99-1288 (La.App. 5th Cir.1/24/01), 782 So.2d 1055, 1059.
The evidence here shows that B.W. was seven years old and the Defendant *1010 was 40 years old at the time of the offenses, thus there was an age difference of greater than two years between the accused and the victim, who was not yet seventeen. Further, B.W. identified the Defendant as the man who committed the lascivious act by touching her "private part," while riding in the back of her aunt's car, and covered her mouth when she tried to call to her mother for help. She relayed these events to her mother shortly after they arrived home, and then to Officer Oubre, Dr. Roberts, the triage nurse, and Detective Oubre. Detective Oubre testified that B.W.'s recounting of the event was consistent with the medical reports and Officer's Oubre's investigation. Despite any inconsistencies in the child's statements, after viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of indecent behavior with a juvenile beyond a reasonable doubt and, thus, there was sufficient evidence to convict the Defendant of this charge.
The jury also convicted the Defendant of molestation of R.W. La.R.S. 14:81.2A defines molestation as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
Thus, the essential elements of the crime of molestation of a juvenile, each of which the prosecution must prove beyond a reasonable doubt, are (1) the accused was over the age of seventeen, (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen, (3) the accused was more than two years older than the victim, (4) the accused had the specific intent to arouse or gratify either the child's sexual desires or his own sexual desires, and (5) the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. State v. LeBlanc, 506 So.2d 1197, 1199 (La.1987).
"Properly construed, the `use of force' element refers to the forcible means of overcoming the will or the resistance of the victim, and this additional essential element requires a use of force in addition to any mere touching or minimum effort exerted in performing the lewd act." State v. Leblanc, 506 So.2d at 1200.
The victim R.W., was five years old at the time of the crime. R.W. testified that the Defendant touched her buttocks and "went" inside her vagina. When she tried to call to her mother, the Defendant prevented her by covering her mouth with his hand. Officer Oubre stated that her story was consistent with the mother's complaint. Again, although there may have been some inconsistencies in the two children's' versions of the events, we find that any rational trier of fact could have found the essential elements of the crime of molestation of a juvenile beyond a reasonable doubt. Thus, the evidence was sufficient to convict the Defendant of the crime.
*1011 The Defendant also asserts as error that the prosecutor made impermissible comments during closing argument that were highly prejudicial. The assistant district attorney made the following comments during closing argument.
Mr. O'Regan:
[I] ask you when you go back in that room, the temptation will be great to feel sorry for the defendant and take matters into your own hands, and you may say to yourself, yes, the evidence is compelling, yes, we do believe Bria and Randy, we do believe that he did this, but we're going to let him go this time and teach him a lesson. Doesn't happen, ladies. These guys don't learn lessons.
Mr. Stricks:
I object to that, that's beyond the evidence.
The Court:
Sustained.
Mr. O'Regan:
You come back with a not guilty verdict he's going to laugh his way home.
Mr. Stricks:
I object to that, your Honor.
The Court:
Mr. O'Regan.
Mr. O'Regan:
When you go back there the only way you're going to stop him from doing this to other girls is with a verdict of guilty as charged, that's the only way. The damage is already....
Mr. Stricks:
Object, your Honor, that is not the function of the jury, to stop future suspicions or allegations.
The Court:
I'm going to ask the jury to disregard that last sentence.
La.C.Cr.P. art. 771 states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770....

* * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1036, the Court stated:
The general rule concerning the scope of closing arguments is that they are confined to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La.C.Cr. P. art. 774. Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. And, even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. [Citations omitted].
In this case, Defendant objected to the prosecutor's comments and the trial judge sustained the objections, and also *1012 admonished the jury to disregard the prosecutor's last remark. Since the Defendant failed to ask for an admonition for the other remarks, or request a mistrial, the mistrial provision of Article 771 was not triggered. A failure to ask for relief under Article 771 precludes a defendant from raising the issue of mistrial on appeal. State v. Sias, 97-283 (La.App. 5th Cir.1/27/98), 706 So.2d 650, 653. Furthermore, since we find that the evidence was sufficient to convict the Defendant, we are not "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. Thus, we find no reversible error in this regard.
The Defendant next contends that the sentence imposed by the trial court was excessive because the judge did not adequately consider the guidelines set forth in La.C.Cr.P. art. 894.1, and because the Defendant was a first time felony offender.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const.Amend. 8 La. Const. of 1974, Art. I, Sect. 20; State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Richmond, 734 So.2d at 38; State v. Lobato, 603 So.2d 739, 751 (La.1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside, absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. La.C.Cr.P. art. 881.4(D); Richmond, 734 So.2d at 38. Nonetheless, a sentence may be reviewed for excessiveness even though it is within statutory range. Richmond, 734 So.2d at 38.
On appellate review of a sentence, the only relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608.
The sentence for a conviction of indecent behavior with a juvenile is a fine of not more than five thousand dollars, or imprisonment with or without hard labor for not more than seven years, or both. La.R.S. 14:81. Here, the Defendant was sentenced to serve three and one-half years of imprisonment at hard labor. The sentence for molestation of a juvenile is a fine of not more than five thousand dollars, or imprisonment, with or without hard labor, for not less than one nor more than ten years, or both. La.R.S. 14:81.2. The trial judge sentenced the Defendant to imprisonment of three and one-half years, without a fine.
The trial judge ordered both sentences to run concurrently. The sentence for indecent behavior with a juvenile is half the maximum imprisonment allowed by law. The other sentence is well within the sentencing range and is far from the maximum allowed by law. Furthermore, the trial judge stated that she reviewed the pre-sentence investigation report and took into consideration the fact that the Defendant was a first felony offender in sentencing him. Under the facts of this case, we find that the sentences are not excessive.
ERROR PATENT
The record was reviewed for patent errors patent, in accordance with La.C.Cr.P. *1013 art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find no patent error in our review.
Accordingly, the Defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The State conceded that there was no probable cause for the first two counts.
[2] Ms. Fisher's first name is spelled two different ways in the record, Eloise and Lois.